State v. Schuchmann.

## THE STATE v. SCHUCHMANN, *Appellant*.

### In Banc, March 3, 1896.

1. **Practice, Criminal**: BILL OF EXCEPTIONS, EXTENSION OF TIME FOR FILING. The trial court can not extend the time granted a party to file his bill of exceptions, after it has expired.

2. **Criminal Law**: BURGLARY: INDICTMENT: CURTILAGE OF DWELL-ING. An indictment for burglary based upon Revised Statutes, 1889, section 3526, which declares it to be burglary to break and enter "any building within the curtilage of a dwelling house, but not forming a part thereof" must charge that the building in which the burglary was committed was within the curtilage of the dwelling house, otherwise it will be fatally defective.

3. **Statute**: GENERAL WORDS FOLLOWING PARTICULAR ONES: EJUSDEM GENERIS: CONSTRUCTION. Where a statute enumerates particular classes of persons or things, followed by general words, the general words will be limited in their meaning and restricted in their operation to objects of like kind with those specified.

| | |
|---|---|
| 133 | 111 |
| 134 | 269 |
| 134 | 527 |
| 133 | 111 |
| 136 | 351 |
| 136 | 675 |
| 137 | 296 |
| 133 | 111 |
| 71a | 239 |
| 133 | 111 |
| 141 | 289 |
| 141 | 340 |
| 133 | 111 |
| 145 | 367 |
| 145 | 679 |
| 79a | 393 |
| 80a | 357 |
| 133 | 111 |
| f83a | 72 |
| f83a | 666 |
| 133 | 111 |
| f159 | 467 |
| 84a | 507 |
| 133 | 111 |
| 161 | 132 |
| 87a | 12 |
| 87a | 14 |
| 133 | 111 |
| 162 | 611 |
| 133 | 111 |
| f164 | 594 |
| 133 | 111 |
| 178 | 5320 |
| e179 | 2283 |

4. ———: ———: ———: CRIMINAL LAW: BURGLARY. The words "other building" used in Revised Statutes, 1889, section 3526, making it burglary for any person to break and enter "any shop, store, booth, tent, warehouse, or other building," etc., mean buildings of like kind with those enumerated, and do not embrace a "chicken house building." *State v. Hecox,* 83 Mo. 532, overruled. (GANTT, BARCLAY, and MACFARLANE, JJ., dissenting.)

5. **Penal and Criminal Statutes:** CONSTRUCTION. A statute which is both penal and criminal should be strictly construed as to those parts which are against the parties sought to be brought within their terms and liberally construed as to those parts which are in their favor.

6. **Criminal Law:** INDICTMENT: PRACTICE: APPEAL. Fatal defects in an indictment may be considered on appeal and the appellate court may raise the point of its own motion.

7. ———: ———: PRINCIPAL AND ACCESSORY. Under Revised Statutes, 1889, section 3944, providing that "every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted, and punished in the same manner as a principal in the first degree," the indictment may either allege the matter according to the fact or charge him as principal in the first degree.

8. ———: PRACTICE: CHANGE OF VENUE: AFFIDAVIT: BILL OF EXCEPTIONS: APPEAL. An affidavit for a change of venue can only be preserved in a bill of exceptions and where no bill is filed its sufficiency can not be considered on appeal.

*Appeal from Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*Zach. J. Mitchell* for appellant.

(1) All distinction between principal and accessory before the fact, has been abolished by section 3944, Revised Statutes, 1889, and said section provides that such accessory "may be charged, tried, and punished in the same manner as a principal in the first degree." *State v. Fredericks,* 85 Mo. 145; *State v. Anderson,* 89

Mo. 312; *State v. Buckner*, 93 Mo. 88; *State v. Payton*, 90 Mo. 220. The term "may" should be construed as "shall," and the indictment as against appellant should have been as full and explicit in its essential term, as though he were indicted as a principal, and these omissions can not be supplied by referring back o the terms used in the indictment as against the principals. And, further, the term "chicken house building," as set out in said indictment, is not such a building as comes within the term "or other building" as used in section 3526, Revised Statutes of Missouri, 1889, defining burglary in the second degree, in that the term "or other buildings" as therein used, is a general term, following specifically defined buildings, and can only be construed as including buildings of a like class to those so specifically defined, and, furthermore, the term "chicken house building" coming clearly within the legal definition of a building within the curtilage of a dwelling house, the indictment should have so charged it. (2) An examination of the affidavit for a change of venue, filed herein, which is a part of the record proper (*State v. Worrell*, 25 Mo. 205–209), shows upon its face no statutory ground for the granting thereof by the circuit court of St. Louis county to the circuit court of Franklin county, giving the Franklin circuit court jurisdiction of the cause, but clearly presents the statutory grounds of prejudice in the minds of the inhabitants of St. Louis county against defendant, qualified by the alleged reason therefor.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The indictment in this case is in the usual form, charging the crime of burglary and larceny, and is sufficient. (2) Upon the record proper, this case

ought to be affirmed. The court can not consider the bill of exceptions or any points attempted to be saved by it, for the reason that the same was not filed, nor was an order entered of record extending the time for filing the bill of exceptions, within the time prescribed by law. On January 15, the court made an order allowing the defendant time in which to file his bill of exceptions, which time expired on March 16, on which last day the record in this case closed and the judgment became final, and there was no authority either to file the bill of exceptions thereafter or to make an order extending the time for filing the same; therefore, the order made by the trial judge on March 19, three days after the time previously allowed had expired, is inoperative and of no effect whatever. Nor did the defendant file the bill of exceptions within the time allowed under this order, a week from March 19, but the bill was not filed until March 29, or ten days after the attempted extension of time had expired. The judgment should, therefore, be affirmed. · *State v. Simmons*, 124 Mo. 443; *State v. Clark*, 119 Mo. 426; *State v. Britt*, 117 Mo. 584; *State v. Mosley*, 116 Mo. 546; *State v. Scott*, 109 Mo. 226; *State v. Hill*, 98 Mo. 570; *State v. Broderick*, 70 Mo. 622; *Boardman v. Vaughn*, 44 Mo. App. 549; *McHoney v. Insurance Co.*, 44 Mo. App. 426; *State v. Apperson*, 115 Mo. 470; *State v. Berry*, 103 Mo. 367; *State v. Harben*, 105 Mo. 603; *State v. Seaton*, 106 Mo. 208; *State v. Ryan*, 120 Mo. 88; *State v. Mansfield*, 106 Mo. 110; *State v. Sweeney*, 54 Mo. App. 580; R. S. 1889, sec. 2168.

DIVISION TWO.

SHERWOOD, J.—On change of venue from St. Louis county circuit court, the defendant was tried in the Franklin circuit court upon an indictment, the material portions of which are as follows:

"That Joseph Turner and Ruben Troller on the second day of July, A. D. one thousand eight hundred and ninety-three, at the county of St. Louis, in the state of Missouri, did then and there feloniously and burglariously break into and enter a certain chicken house building, the property then of William C. Price, by forcibly pushing and bursting open an outer window of the same, and with the intent thereby then and there feloniously and burglariously to take, steal, and carry away certain property, consisting of divers live chickens and valuable things, which were then and there being kept and deposited in said building;  and then and there did unlawfully and burglariously take, steal, and carry away, from and out of said building of the said valuable things, the property then of the said William C. Price, divers live chickens in number and of value to these jurors unknown.

"And the jurors aforesaid upon their oath aforesaid, do further present and charge that before the said felonious burglary and larceny was committed as aforesaid, one Edward Schuchmann did in the said county and on the said day, unlawfully, feloniously, and burglariously advise, incite, procure, and aid the said persons, Joseph Turner and Ruben Troller to commit the said crimes and felony, against the peace and dignity of the state.        R. LEE MUDD,

"Pros. Att'y of St. Louis Co., Mo."

The trial resulted in the conviction of the defendant, his punishment being assessed at imprisonment in the penitentiary for the term of three years.

1.  On the sixteenth of March, the time granted defendant in which to file his bill of exceptions having expired, the trial judge was powerless on the nineteenth of March to extend by his order the time for filing the bill of exceptions, as we have over and over again decided.

2. The section of the statute upon which the foregoing indictment is framed is as follows: "Every person who shall be convicted of breaking and entering: *First*, any building within the curtilage of a dwelling house, but not forming a part thereof; or, *second*, any shop, store, booth, tent, warehouse or other building, or any boat or vessel, or any railroad car in which there shall be at the time some human being, or any goods, wares, merchandise, or other valuable thing kept or deposited, with intent to steal or commit any felony therein, shall, on conviction, be adjudged guilty of burglary in the second degree." R. S. 1889, sec. 3526.

Under this section, the indictment, if based on the first clause thereof, must charge that the building in which the burglary was committed was *"within the curtilage of the dwelling house."* Without such averment the indictment would be fatally defective, because of not containing the descriptive words the statute contains.

If the indictment be based on the second clause of the section, then it is bad because the rule as to matters *ejusdem generis* applies—that good rule of construction which requires that "where a particular class * * * is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class." Broom, Leg. Max. [6 Ed.] *625.

Here the term "chicken house building" is not of the same kind or class as those previously mentioned, and therefore can not fall within the definition of the term "other buildings." *State v. Bryant*, 90 Mo. 534, and cases cited. See, also, *State ex rel. v. Seibert*, 123 Mo. *loc. cit.* 438.

The indictment is therefore bad under either clause of the section.

This view of the matter is not in accord with *State v. Hecox*, 83 Mo. 532, where a burglary in a "granary" was committed, and there was no allegation that it was within the curtilage; but for reasons already given, we do not regard that case as sound law and consequently will not follow it.

Moreover, the statute is both penal and criminal, and therefore to be strictly construed; construed strictly as to those portions which are against defendants, but liberally construed in those which are in their favor; that is, for their ease and exemption. No person is to be made subject to such statutes by implication, and when doubts arise concerning their interpretation, such doubts are to weigh only in favor of the accused. Bishop, Stat. Cr. [2 Ed.], secs. 193, 194, 227.

The defects mentioned in the indictment, being fatal in their character, may be raised and considered for the first time in this court, and of our own motion. *State v. Meyers*, 99 Mo. *loc. cit.* 112, and cases cited.

When writing the above, I had supposed the doctrine so well settled in regard to the proper construction to be given to the meaning of general words which follow those which designate or create a particular class or classes of persons or things, that I thought it needless to do but little more than barely to refer to some of the authorities which announced the time-worn maxim, *ejusdem generis*. But it seems from recent suggestions that I erred in so thinking, and so I will refer to some "wise saws and modern instances" illustrating the hackneyed position heretofore taken.

Thus in *Reg. v. Whitnash*, 7 Barn. & C. 596, Stat. Car. II, chapter 7, section 1, provided, "that no trades-

man, artificer, workman, laborer, or other person whatsoever'' should exercise his ordinary calling on the Lord's day. And thereupon it was ruled that the words ''other person'' did not include a *farmer*, because not of like denomination with those specifically mentioned; BAYLEY, J., remarking that if all persons were meant, there was no need of the specific enumeration.

So in *Ex Parte Hill*, 3 C. & P. 225, under the common law rule that where general words follow particular and specific words, the former must be confined to things of the same kind, it was ruled that a *''bull''* was not included under the words ''other *cattle*,'' as used in a statute which made it indictable for any person to ''wantonly and cruelly beat, abuse, or ill treat any horse, mare, gelding, mule, ass, ox, cow, heifer, steer, sheep, or other cattle,'' the court saying: ''Horse, mare, and gelding, are one class; ox, cow, heifer, and steer, are another class; and *  *  * the bull is not included in this act.''

*Sandiman v. Breach*, 7 B. & C. 96, was an action of *assumpsit* brought to recover the expense of hiring a postchaise, the defendant having failed to convey plaintiff in his stagecoach as he had contracted to do. For the defense it was contended that the contract was illegal, because it was to be performed on the Sabbath. Lord TENDERDEN did not approve this contention and in delivering the unanimous opinion of the court of queen's bench said:

''It was objected that the plaintiff in this case could not recover, because the contract, for the breach of which the action was brought, was to have been performed on the Sabbath day, and that it could not legally be performed on that day. But upon looking into the statutes (3 Car. 1, chap. 1, and 29 Car. 2, chap. 7), upon which the objection was founded, we are of opinion that this case does not come within

them.   *   *   *   By the first of these, the 3 Car. 1, chapter 1, it was enacted, that 'no carrier with any horse, nor wagon-man with any wagon, nor cartman with any cart, nor wainman with any wain, nor drover with any cattle, shall by themselves, or any other, travel on the Lord's day;' and by the 29 Car. 2, chapter 7, that 'no tradesman, artificer, workman, labourer, or other person or persons, shall do or exercise any worldly labour, business, or work of their ordinary callings upon the Lord's day.'   It was contended, that under the words 'other person or persons' the drivers of stagecoaches are included.   But where general words follow particular ones, the rule is to construe them as applicable to persons *ejusdem generis*.   Considering, then, that in the 3 Car. 1, chapter 1, carriers of a certain description are mentioned, and that in the 29 Car. 2, chapter 7, drovers, horse-coursers, wagoners, and travelers of certain descriptions, are specifically mentioned, we think that the words 'other person or persons' can not have been used in a sense large enough to include the owner and driver of a stagecoach."

That case was approvingly cited and followed in *St. Louis v. Laughlin*, 49 Mo. 559, where a question arose as to whether a license tax could be imposed on the profession of a lawyer.   The charter, under which the city authorities proceeded in imposing the tax, provided as follows:   "The mayor and city council shall have power within the city, by ordinance not inconsistent with any law of this state, to license, tax, and regulate auctioneers, grocers, merchants, retailers, hotels, boarding houses, tenement houses, office buildings, public halls, public grounds, concerts, photographers, artists, agents, porters, runners, drummers, public lecturers, public meetings and shows, real estate agents and brokers, horse and cattle dealers, beerhouses, patentright dealers, inspectors and gaugers, stockyard

proprietors, examiners of titles, conveyancers, mercantile agents, insurance companies, banking or other corporations or institutions, street railroad cars, hackney carriages, omnibuses, carts, drays, and all other vehicles, and all other business, trades, avocations, or professions whatever." And it was held, following the ruling in the case just previously cited, that the city had no power to impose a license tax on a lawyer, notwithstanding the charter as quoted, concludes with the words *"all other business, trades, avocations, or professions whatever."*

The authority of *Laughlin's* case was recognized in *St. Louis v. Bowler*, 94 Mo. *loc. cit.* 633, and has been uniformly followed by the courts of appeals. *Knox City v. Thompson*, 19 Mo. App. 523; *State ex rel. v. Taaffe*, 25 Mo. App. 567; *Hannibal v. Price*, 29 Mo. App. 280; *St. Joseph v. Porter, Ibid.* 605.

The only reason why we did not make the same ruling in *Bowler's* case as in *Laughlin's*, was that the charter had been amended, so that it had become much more comprehensive in its terms, the concluding words being: "All occupations, professions, and trades, *not heretofore enumerated, of whatever name or character."* This quotation shows the pronounced difference beween, and the distinguishing features of, the two cases when thus contrasted.

Where landlords were authorized by statute to distrain for rent, "all sorts of corn and grass, hops, roots, fruits, pulse, or other product whatsoever, which shall be growing on the estates demised," this was held not to include trees, shrubs, and plants growing in a nursery garden. *Clarke v. Gaskarth*, 8 Taunt. 431.

A statute exempted from taxation "every building erected for the use of a college, incorporated academy, or *other* seminary of *learning;"* and upon this it was ruled that inasmuch as all those enumerated were *cor-*

*porations,* that therefore the general words, "or other seminary of learning" required that such institution should also be incorporated in order to have the benefit of the exemption. *Chegaray v. Mayor,* 13 N. Y. 220.

In Illinois a railroad company was authorized by its charter "to purchase, hold, and use all such real estate and other property as may be necessary for the construction of its railway and stations, and other accommodations as may be necessary to accomplish the objects of its incorporation." But the term *"other accommodations,"* was held not to include an *elevator,* though confessedly adding to the facilities for handling, storing, and shipping grain, and thereby enabling the railroad company to do a greater business; and among other reasons suggested by the court for this ruling it was said that "whatever is included in the expression, *'other accommodations,'* must be of the same class or kind as 'railway and stations,' " and then allusion is made to the well settled canon of construction, that a general description following a specific enumeration of objects or things, will be held to include only such as are of the *same kind* as those specifically enumerated. *In re Swigert,* 119 Ill. 83.

A statute of the state of Pennsylvania made it a crime for any "warehouseman, wharfinger, or other person," to issue any vouchers for goods, etc. And upon this statute it was ruled, that being a penal statute it must be construed strictly, and that the words, *"other persons"* following the particular words, "warehouseman" and "wharfinger" must be adjudged to refer to other persons *ejusdem generis,* viz.: those who are engaged in a *like* business, or who conduct the business of warehouseman or wharfinger with some other business or pursuit, and that no one unless brought within the plain terms of the act, could be held guilty thereunder. *Bucher v. Com.,* 103 Pa. St. 528.

Governed by the principle under discussion, it was ruled in Michigan that a statute which gave "every wife, child, parent, guardian, husband, *or other person*" a right of action against a liquor seller for injury done to the plaintiff by reason of the intoxication of any person, did not give the intoxicated person *himself* a right of action, and that *he* was not within the statute. *Brooks v. Cook,* 44 Mich. 617.

An insurance case in England, decided so late as 1887, in the house of lords, affords forcible illustration of the doctrine in hand. A steamer was insured by a policy on the ship and her machinery, including the donkey engine. The policy covered perils of the sea, specially naming many, and then continued: "*and of all other perils, losses, and misfortunes that have or shall come to the hurt, detriment, or damage of the aforesaid subject-matter of this insurance, or any part thereof.*" For the purposes of navigation the donkey engine was being used in pumping water into the main boilers, when, owing to a valve being closed which ought to have been kept open, water was forced into and split open the air chamber of the donkey pump. The closing of the valve was either accidental or due to the negligence of an engineer, and was not due to ordinary wear and tear. It was held that the injury was not covered by the policy, as it was not a peril of the sea; and although it was undoubtedly "*a loss or misfortune,*" yet the specific words of the policy which preceded its general language, it was said, restricted it to the same genus as the specific words. In the course of his judgment the chancellor, HALSBURY, said: "If understood in their widest sense the words are wide enough to include it [the injury]; but two rules of construction now fairly established as part of our law may be considered as limiting those words. One is that words, however general, may be limited with respect to the

subject-matter in relation to which they are used.  The other is that general words may be restricted to the same genus as the specific words that precede them." *Ins. Co. v. Hamilton*, L. R. 12 App. Cas. 484, *loc. cit.* 490.  To the like effect see *Matter of Hermance*, 71 N. Y. 481; *People v. Railroad*, 84 N. Y. 565; *People v. Richards*, 108 N. Y. 137, and Sutherland, Stat. Const., secs. 268, et seq.; *State v. Stoller*, 38 Iowa, *loc. cit.* 324, and cases cited; Bishop, Stat. Cr., secs. 245, et seq., and cases cited; *State v. McCrum*, 38 Minn. 154.

Of course if we "take the wings of the morning and fly unto the uttermost parts of the earth" we may industriously ferret out some sporadic cases contrary to the well settled rule here announced, but I do not believe we should do this in entire disregard of our own decisions, and of the overwhelmning weight of authority.

And, in this connection, we should not be unmindful of the fact that criminal statutes are to be strictly construed.   Says Bishop:   "Such statutes are to reach no further in meaning than their words; no person is to be made subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused.   Only those transactions are covered by them which are within both their spirit and their letter."   Stat. Crim. [2 Ed.], secs. 194, 218, 220, 227, 119, 193.

Elsewhere the learned author observes:   "As stated by Hawkins, the doctrine is:   'No parallel case, which comes within the same mischief, shall be construed to be within the purview of it [the statute], unless it can be brought within the meaning of the words.'   In slightly different language, though a case of this sort is fully within the mischief to be remedied, and is even of the same class and within the same reason as other cases enumerated in the statute, con-

struction will not be permitted to bring it within the statute unless it is also within the statutory words." *Ib.*, sec. 220.

In *Daggett v. State*, 4 Conn. 60, HOSMER, C. J., when speaking of the strictness which should characterize the construction of such statutes, aptly remarks: "In extension of the letter of the law, nothing may be assumed by implication; nor may the mischief *intended* to be prevented or redressed, as against the offender, be regarded in its construction. It was the object of the principle to establish a certain rule, by conformity to which mankind should be safe, and the discretion of the judge limited. How much this must contribute to the security and enjoyment of the citizen, is too palpably obvious to require illustration. Upon the before mentioned principle, it has been adjudged, that an act made to punish the person who stole a *cow*, is not applicable to him who steals a *heifer; Richard Cooke's* case, Leach's C. L. 109, and a law prohibiting the transportation of provisions in any wagon, or otherwise, to an enemy, is not infringed by driving fat oxen on the leg. *The United States v. Sheldon*, 2 Wheat. 119. That the mischiefs at which these laws were aimed, existed, in both the cases alluded to, is past a question; but the acts prosecuted not being within the words of the legislature, were considered as not within the prohibitions of the laws. I will only add that the moment the strict construction of penal laws is abandoned, the difference between their interpretation, and that of remedial laws, must terminate, as there is no middle ground between them."

In *United States v. Wiltberger*, 5 Wheat. 76, Chief Justice MARSHALL said: "It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated

in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

Guided by these considerations, I do not regard the term *"chicken house building"* as one recognized by the statute under discussion, and therefore regard the indictment fatally defective.

3. Section 3944, Revised Statutes, 1889, provides that: "Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted, and punished in the same manner, as a principal in the first degree."

Under this section it has been contended that the words "may be," etc., mean *"shall,"* but we do not look at the point in that way. The point remains as it was at common law; the indictment may either allege the matter according to the fact or charge both the principal and the accessory as principals in the first degree. *State v. Anderson*, 89 Mo. *loc. cit.* 333.

4. As to the affidavit for a change of venue, it can not be noticed, since it could only have been preserved in a bill of exceptions, and there is none in this case.

Because of the defect in the indictment the judgment should be reversed and the cause remanded. Burgess, J., concurs. Gantt, P. J., dissents.

IN BANC.

Per Curiam.—The foregoing opinion handed down in division number two is adopted as the opinion

of the court *in banc*. BRACE, C. J., and BURGESS and ROBINSON, JJ., concurring with SHERWOOD, J., therein. BARCLAY, GANTT, and MACFARLANE, JJ., dissenting. The judgment of the circuit court will therefore be reversed and the cause remanded.

GANTT, P. J. (*dissenting*).—That the principle of *ejusdem generis* is frequently applied in the construction of statutes both civil and criminal I readily concede, and it is as often held that penal laws must be strictly construed in favor of the accused and against the state. But after all that has been said these canons of construction have but one purpose and that is to enable the courts to ascertain the legislative intent. If the object and intention is plain there is nothing to construe.

In *Heydon's* case, 3 Coke's Reports, 8, it was resolved by all the barons of the exchequer "that for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law) four things are to be discerned and considered: 1st. What was the common law before the making of the act? 2nd. What was the mischief and defect for which the common law did not provide? 3rd. What remedy the parliament hath resolved and appointed to cure the disease of the common wealth? And, 4th. The true reason of the remedy; and then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtile inventions and evasions for continuance of the mischief, and *pro privato commodo*, and to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico*."

The courts of this country have uniformly agreed that they have no right to extend a criminal statute to

cases out of its letter, but the question often arises, as in the case at bar, when the words are broad enough, does the case in hand fall within the mischief of the statute.   One reason assigned for investing the judges with the office of construing statutes is "that the law-makers can not possibly set down all cases in express terms."

A general word following one or more less general terms *ejusdem generis* takes its meaning from them and ordinarily is presumed to be restricted to the same genus as those words.   The reports abound in illustrations of the application of this rule of construction; as, where a statute authorized distress for rent of "corn, grass, or other product" growing on the leased premises, only products similar to corn and grass could be distrained, and not young trees which were also products of the land but of distinct character.   *Clarke v. Gaskarth*, 8 Taunt. 431.

And in an act making it penal for any "warehouse-man, wharfinger, or *other person*, to issue any voucher for goods, wares, etc., unless he shall have actually received them in store or to ship or transfer such goods, etc., without the return of the receipt, the phrase 'other person,' is to be construed *ejusdem generis* with ware-houseman and wharfinger and does not include one who received grain on storage with the option of becoming its purchaser and without compensation if he shall not exercise that option and who gave a receipt not intended to be negotiable."

Another rule of construction often resorted to and growing out of the association of words in an act of the legislature is that "the inferior does not include the superior."   Thus where duties were imposed under the general head of "metals," upon copper, brass, pewter, and tin and *on all other metals not enumerated*, it was held to include only metals inferior to those named and

not to fall on gold or silver which are known as *precious metals.    Casher v. Holmes*, 2 B. & Ad. 592.

But along with these rules of construction which have descended to us from the sages of the law has come at all times the admonition that the plain intention of the law must not be sacrificed by any rule of construction.    As said by the supreme court of the United States "when the words are general and include various classes of persons there is no authority which would justify a court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all.    The words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent."

In *Regina v. Payne*, L. R. 1 Cr. Cas. Res. 26, the prison act, 1865, which forbade the conveyance into any prison, with intent to facilitate the escape of a prisoner, *of any mask, dress*, or other disguise, *or of any letter, or any other article or thing*, it was unanimously ruled by the court through C. B. POLLOCK that a crowbar was included under the words "*or any other article or thing*," though the rule of *ejusdem generis* was pressed by counsel in argument.

In *Woodworth v. State*, 26 Ohio St. 196, it was held that "a supervisor of roads" was an officer within the meaning of a statute which provided, "that if any person shall abuse any judge or justice of the peace, resist or abuse any sheriff, constable, *or other officer* in the execution of his office, the person so offending shall be punished," etc.    The principle of *ejusdem generis* was invoked, and Chief Justice McILVAINE said:    "It must be remarked that the rule of construction referred to above can be used only as an aid in ascertaining the legislative intent, and not for the purpose of confining the operation of a statute within limits narrower than those intended by the lawmaker.

It affords a mere suggestion to the judicial mind that, where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace those not within the class. The suggestion is one of common sense. Other rules of construction are, however, equally potent, especially the primary rule, which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. Another well established principle is, that even the rule requiring the strict construction of a penal statute, as against the prisoner, *is not violated by giving every* word of the statute its full meaning, unless restrained by the context." After holding that the statute included a supervisor under the phrase of "other officer," he proceeds to say: "This is the doctrine of the later cases generally, and especially those of American courts. It is not intended, however, to ignore the rule which requires penal statutes, as against the prisoner, to be construed strictly, and, in his favor, liberally. But it does prevent a construction, as against him, so strict, or, in his favor, so liberal, as to defeat the obvious intention of the legislature." See, also, *Reg. v. Doubleday*, 3 E. & E. 500 (107 Eng. Com. L. Rep).

In *Shillito v. Thompson*, 1 Q. B. Div. 12, a prosecution was had under a by-law of Doncaster borough, which provided that if any butcher or dealer in meat, or any fishmonger, poulterer, or other person, should expose on his premises, or have in his possession with intent to sell or expose to sale any meat, fish, poultry, or other victuals or provisions, unfit for food of man, he should be subject to penalty. The defendant, a *grocer*, exposed for sale on his premises *cheese* which was unfit for food. He was convicted and on his appeal

urged that "cheese is not *ejusdem generis* with meat and the other things mentioned in the bye-law," but the conviction was affirmed.

In *State v. Solomon*, 33 Ind. 450, a statute for the protection of religious meetings provided that if any person should erect, bring, keep, contrive, or maintain any booth, tent, wagon, huckster shop, or other place for the sale of intoxicating liquors, cider, beer, or other drinks *or for the sale of any other article whatever*, etc., he should be punished, etc. It was shown the defendant sold cigars, tobacco, candies, peaches, and melons within the forbidden territory of a camp meeting. On appeal the supreme court of Indiana said: "The evidence * * * clearly brings the case within the letter and spirit of the amendment of 1865, above referred to. * * * It is true that the articles sold and for sale are not those that are specifically named in the statute, but they are 'other articles' spoken of in the law."

So that while it is often safe to apply the maxim *"noscitur á sociis,"* in the interpretation of the words of a statute, the courts look at the statute and *every word of it*, and statutes *in pari materia*, and consider the reason of the statute to ascertain its meaning, and are not bound by any one rule of construction, however useful it may have proved.

Applying the tests in *Heydon's* case, *supra*, we find burglary at common law as defined by Lord COKE was committed when one in the nighttime broke and entered into a mansion house of another with intent to kill some reasonable creature or to commit some other felony within the same, whether his felonious intent was executed or not. 3 Inst. 63; 1 Hale, P. C. 549; 2 Russell on Crimes, 1.

By statute in most, if not all, of the states the common law has been modified so that the offense can

now be committed in buildings of almost every kind constructed by mankind. It is thus evident that the legislature had in view the punishment of a large class of offenders, prowlers without visible means of support : who were breaking into the storehouses and warehouses and unguarded buildings where valuable goods were kept and robbing them of their contents, and the remedy proposed was to make this offense burglary, though not included in the common law definition of that crime, but mitigating the degree of the crime, and grading the punishment therefor.

Burglary in the second degree by our statute, section 3526, Revised Statutes, 1889, is defined to be the "breaking and entering: *First*, any building within the curtilage of a dwelling house, but not forming a part thereof; or, *second*, any shop, store, booth, tent, warehouse or other building, or any boat or vessel, or any railroad car *in which there* shall be at the time some human being, or any goods, wares, merchandise, or other valuable thing kept or deposited, with intent to steal or commit any felony therein."

I think that it is perfectly plain that the lawmakers intended to throw the protection of this statute over any "building, *in which there should be at the time some human being, or any goods, wares or merchandise, or other valuable thing kept or deposited,*" and that the characterization of the building was only limited or restricted by the modifying clauses, to wit, "*in which there should be at the time some human being or merchandise or valuable thing kept or deposited,*" and not by the enumeration of other buildings by their usual designation. It seems too plain for construction that this was the obvious intention, and that "the chicken house building" in this indictment falls not only within the letter but the spirit of the statute as well.

I do not think *ejusdem generis* can apply to a con-

struction of this section for another reason. That principle applies only when the specific words are all of the same class or nature. When they are of different genera the meaning of the general word is unaffected by its connection with them. The particular words, "shop" or "store" on the one hand, "booth" or "tent" on the other, and "warehouse" on still another, each exhausted whole classes, and each · distinct from the other, hence "other building" can not derive its color by association with any one of them nor by a *mingling of all*, but stands as the representative of a distinct class not specified by anything that preceded it but fully, *definitely, and clearly, designated by the qualifying phrases that follow it.* *State v. Canney*, 19 N. H. 135; *State v. Wilson*, 47 N. H. 101.

It seems to me evident that it was the intention of the lawmakers to punish the felonious breaking and entering into any building in which goods and merchandise or other valuable things were kept or deposited, it mattered not by what name such building was otherwise designated. The essential thing is that a human being must at the time be in the building, or goods, wares, merchandise, or other valuable thing must be kept or deposited in the building. These descriptive qualifying clauses are the connecting links between burglary and any building.

In *Bethune v. State*, 48 Ga. 505, the doctrine of *ejusdem generis* was invoked in a prosecution for burglary under a statute where the offense consisted in "breaking and entering into a dwelling, mansion, or storehouse, or other place of business of another where valuable goods, wares, etc., are contained or stored." It was contended that unless the house was not a dwelling, mansion, or storehouse, it must be a place of business where the business carried on was similar to that which appertained to a storehouse, or the business

place must be in the nature of a storehouse. But the supreme court of Georgia said: "The words, 'or other place of business of another,' are further defined by the qualification 'where valuable goods, wares, produce, *or any other article* of value are contained or stored,' and when the two terms of the sentence are put together just as they occur in the code, the places where burglary may be committed, beside dwellings, mansions, and storehouses, are as distinctly specified as if they were expressly limited to those three. Indeed, those other places are more accurately described and have a more express definition by the terms of the law itself than the word storehouse."

In *United States v. Wiltberger*, 5 Wheat. (U. S.) 76, *loc. cit.* 95, Chief Justice MARSHALL says: "Though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the *exclusion of cases* which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend."

Endlich on the Interpretation of Statutes, section 410, says: "The general object of the act, also, sometimes requires that the final generic word shall not be restricted in meaning by its predecessors. *    *    * Thus the 17 Geo. 3, chapter 56, which, after reciting that stolen materials used in certain manufactures were often concealed in the possession of persons who had received them with guilty knowledge, and that the discovery and conviction of the offenders was in consequence difficult, proceeded to authorize justices to issue search warrants for purloined materials suspected to be concealed 'in any dwelling house, outhouse, yard, garden, or *other place*,' was held to include, under the last word, a warehouse which was a mile and a half from

the dwelling house; though all the places specifically enumerated were such only as are immediately adjacent to a dwelling house." *Reg. v. Edmundson*, 2 E. & E. 77; 28 L. J. M. C. 213. Though such a warehouse was not *ejusdem generis*, it was within the contemplation of the legislature.

Without further discussion, I hold the indictment sufficient and that the chicken house, in which were kept valuable fowls, was "a building" clearly within the letter and spirit of the statute. I concur in the first, third, and fourth paragraphs of the opinion of my learned brother, but respectfully dissent, for the foregoing reasons, from the second paragraph.

