THE ELGIN HYDRAULIC COMPANY

*v.*

THE CITY OF ELGIN.

*Opinion filed February 21, 1902.*

1. CORPORATIONS—*Elgin Hydraulic Company is not a riparian proprietor.* The Elgin Hydraulic Company, organized under the act of 1867, was created for special purposes and is charged with the performance of special duties, but it is not a riparian owner, and has no property right in the water power which would enable it to recover for damages sustained by the respective owners of the water power by reason of a diminution of the water supply caused by the pumping of water from the river by the city of Elgin.

2. SAME—*section 4 of charter of Elgin Hydraulic Company construed.* Section 4 of the charter of the Elgin Hydraulic Company, which authorizes it to keep and maintain a dam across the Fox river, at Elgin, in good repair at all times, etc., "and generally to do such other acts and things for the preservation and maintenance of said water power as the said board of directors may deem necessary and proper," does not give to the company general authority to do whatever it may deem necessary to protect, preserve and maintain such water power, including the bringing of all necessary legal actions, but only "such other acts and things," *of a similar kind and character* with those enumerated, to preserve such power.

3. STATUTES—*liberal construction of act cannot carry it beyond its general scope and purpose.* Although a statute provides expressly for its own liberal construction in the enforcement of its provisions, yet it cannot be so construed as to carry it beyond the general scope and purpose clearly expressed in its different parts.

*City of Elgin* v. *Elgin Hydraulic Co.* 85 Ill. App. 182, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. GEORGE W. BROWN, Judge, presiding.

J. W. RANSTEAD, CHARLES WHEATON, and D. B. SHERWOOD, for appellant.

CHARLES H. FISHER, and J. M. MANLEY, (R. N. BOTSFORD, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action on the case, brought by the appellant against the appellee in the circuit court of Kane county, to recover damages for an alleged diversion of water of Fox river from a certain dam and race-ways possessed by the plaintiff. By agreement trial was had before the court without a jury, and a judgment was rendered against appellee for one cent and costs. The appellee appealed, and the Appellate Court for the Second District reversed the judgment without remanding the cause, but granted to the plaintiff below a certificate of importance and an appeal to this court.

The declaration alleged, in substance, that the plaintiff was lawfully possessed of a dam, with head-gates, race-ways and appurtenances, across Fox river at Elgin, and was authorized by law to preserve the water power of said river created by said dam, and to regulate the use of the same, for the benefit of its stockholders who operate mills on said river by such water power, and that the plaintiff had expended a large sum of money on said dam and race-ways and had made said water power of great

value; that the city of Elgin became the owner of an acre of land on the bank of said river one-fourth of a mile above said dam, where it erected a pumping station, and wrongfully pumped from the river large quantities of water with which to supply its customers, and for its own use for the putting out of fires, and for other purposes, and had thereby diverted and kept such water from flowing to said dam and through said race-ways, and from supplying the latter with water for the use of the mills of the plaintiff's stockholders; that by reason thereof the water of the river was insufficient to enable the stockholders to operate their mills in so large a manner as they otherwise would, whereby the plaintiff was deprived of the full and beneficial use of its property, and of the benefits, profits and gains thereof, without the defendant having made any compensation therefor.

It appears that the dam was erected in 1839 by William C. Kimball and James T. Gifford in pursuance of authority granted by the legislature, (Laws of 1839,) and that in 1842 Kimball obtained a patent for the land on the west bank of the river and Gifford for the land on the east bank. Afterwards mills were built on the banks of the river below the dam, and race-ways were constructed to carry water to furnish water power to run these mills. In 1867 the owners at that time of the mills, the dam and race-ways, and the lands on which they were constructed, procured an act to be passed by the legislature incorporating the Elgin Hydraulic Company, naming certain persons as incorporators, "being the owners of water power created by the dam." Every owner of such water power was authorized to subscribe for one share of stock in the company, which would entitle him to one vote at all meetings of the stockholders for every inch of water power so owned by him. No certificates of stock were ever issued, but inches of water power of each member of the corporation were the measure of his interest and voting capacity in the corporation. The remaining sec-

tions of the act provide, in substance, as follows: By section 3 said corporation is to be managed by a board of directors of three stockholders, to be chosen annually, at times and in the manner as shall be provided by the by-laws. By section 4 the duty of said corporation, through its board of directors, shall be, "to keep and maintain the dam across the Fox river, at Elgin aforesaid, in good and perfect order and repair at all times, and also to maintain and preserve the race-ways on each side of said river, and generally to do such other acts and things for the preservation and maintenance of said water power as the said board of directors may deem necessary and proper." By section 5 the further duty of the board shall be, "to so regulate gates, flumes and apertures drawing water from said race-ways of each of the stockholders of said corporation, so as to prevent each of said stockholders from drawing or using more water than properly belongs to him, her or them. Said directors are authorized for that purpose, at any time, to enter upon the premises of any stockholder and change, alter or repair the gates, flumes or other apertures for drawing water from the race-ways, and to prevent the use of more water than each is entitled to use, and to stop leakage and waste of water; and all expenses incurred in enforcing the provisions of this section shall be assessed by said board to the stockholders upon whose premises such expenses are incurred, and collected in the manner herein provided for the collection of other assessments by said board." By section 6 the directors are authorized to regulate the drawing of water from the dam and race-ways in time of low-water, and to direct the manner of drawing the same, so as to insure to each a full and just proportion of said water power. By section 7 the expenses of making repairs and performing the duties of the board shall be estimated, and the amount required to be paid therefor shall be ratably assessed upon the stockholders "in proportion to the number of

square inches owned or represented by them, respectively." Section 8 provides for the making of such assessment, the notice of the same to be given, and times of service upon each stockholder. By section 9, upon notice being given, such assessment becomes due and payable to the treasurer of said corporation. Section 10 provides, in case of non-payment, how this assessment shall be collected: "*Provided, however,* that no assessment shall be made against any stockholder of said corporation except upon the basis of the number of square inches of water power owned or represented by him or her as compared to the whole amount of said power." Section 11 provides the manner of collecting judgments rendered on assessment. Section 12 makes the judgments recovered a lien upon the water power against which the same are assessed. Section 13 allows the bringing of suits for the collection of assessments. Section 14 provides for by-laws creating a penalty for the violation of the rules and regulations made by the directors for drawing water. Section 15 makes the act a public act, and provides that in its enforcement its provisions shall be favorably construed.

The evidence showed that the city had dug a well on its land on the bank of the river above the dam, which was fed in part from springs and in part from water of the river, and that it had also laid and extended into the river an intake pipe twenty-four inches in diameter, through which it drew, in part, its water supply. There was evidence tending to prove that at certain times the water power of the stockholders of the appellant company was materially diminished by the diversion of the water above the dam caused by the pumping therefrom by the city. It appeared, also, that from natural causes there had been for many years a gradual diminution of the volume of water in the river, so that with the further decrease caused by the city, as before mentioned, the water power belonging to the members of the appellant

company had become so far reduced that it was insufficient to operate the machinery of their mills and factories except at certain seasons, and for a few hours, alternately, each day.

At the close of the evidence the defendant, the city of Elgin, asked the court to hold, among others, the following propositions as law in the decision of the case:

1. "The court is asked to hold, as a matter of law, that the plaintiff in this action has no property rights in the subject matter of this suit, and therefore has not the right to maintain this action.

2. "The court is further asked to hold, as a matter of law, that under the charter the directors of the plaintiff have only a supervisory interest in and over the dam and race-ways connected therewith, and have no pecuniary interest in the water produced by the dam, the water in the race-ways nor in the soil over which the race-ways extend or upon which the dam is erected.

3. "The court is further asked to hold, as a matter of law, that the plaintiff is not a riparian proprietor by virtue of the provisions conferred by the said charter, therefore cannot assert any riparian rights with respect to the said dam, the water produced thereby, or in the race-ways leading therefrom to the property of the several mill owners using such water.

14. "The court is further requested to hold, as a matter of law, that the damages claimed for in said action are not such damages as the plaintiff can, in any event, recover for this action.

15. "The court is further requested to hold, as a matter of law, that the plaintiff in this action cannot recover for any damages which has or might accrue to these mill owners for any diminution of water or power caused by the city, as alleged and claimed for in said declaration."

But the court refused to so hold, and the defendant excepted.   In refusing to hold these propositions as law in the decision of the case we are of the opinion the court

erred, and that the Appellate Court decided correctly in reversing the judgment on this ground. But it being unnecessary to the decision of the case, we pass no opinion on the other questions decided by the circuit and Appellate Courts.

It appears to be clear from the act incorporating the appellant company, and from its own acts and the acts of its members, that it had no property right in the water power to recover for the injury to which the suit was brought, and that the company was not injured, nor did it suffer any damages, by the acts of the city complained of, in diminishing such water power by pumping water from the river. Under its act of incorporation the company had certain limited powers, and it could not exercise powers not granted to it. It was not a riparian proprietor, and had no pecuniary interest in the water of Fox river nor in the water power created by the dam and other appurtenances. It was created for certain special purposes and charged with the performance of certain special duties, but no property right in the water was conveyed to or vested in the company. In a suit between the same parties, (74 Ill. 433,) brought by the company against the city to recover damages sustained and for money expended in removing dirt, gravel and refuse matter deposited in one of such race-ways, a recovery was allowed because the company had the exclusive charge of the race-way for the purpose of keeping it in repair and was given power to raise money for such purposes; that although the company had no property interest in the race-way it had a pecuniary interest in it, because the obstructions complained of made it necessary to spend its own money to remove such obstructions; that the suit was not one to recover for the lessening of the water power belonging to the owners of such power, but for the expense of removing the obstructions which it was the duty of the company to remove. In that case it was said that the damages to the mill owners would be differ-

ent from the damages to the company there sued for. In the case at bar the damages sued for are those sustained only by the owners of the water power,—that is, the loss caused by the diminution of the water power. The company had control of the dam and race-ways and was charged with the duty of maintaining and keeping them in repair, but it was not alleged or shown that the acts of the city complained of interfered in any manner with the company in the performance of this duty, or caused it to expend any more money therein than would otherwise have been necessary. While it was the duty of the board of directors of the company to "so regulate the gates, flumes and apparatus drawing water from said race-ways of each of the stockholders of said corporation so as to prevent each * * * from drawing or using more water than properly belongs to him," it was not the duty of the board, nor of the company, to supply water power, nor to prevent riparian proprietors from pumping water from the bed of the river, whereby such water power might be diminished or destroyed. Damages to water power accrued to its owners, and not to the company. It is manifest that the mill owners might sustain damages greatly varying in character and amount. One mill owner entitled to the same number of inches of water power as another might by its diminution sustain no damages, or at least only a nominal amount, while such other, for special reasons, might sustain damages to a considerable amount from such diminution of water power. These damages being special to the owner, could be recovered only by him. Neither the company nor any other owner would be entitled to them nor be interested in them, although they would accrue from the same cause common as to all,—that is, the loss of water power.

It is to be borne in mind that the injury complained of is not to any of the appliances or instruments which the company is bound to maintain and keep in repair, but is to the property of individuals for the preserva-

tion of which such appliances and instruments were made and committed to the care of such company. The corporation was created for a special purpose and cannot be used for any other purpose. It may be likened to a drainage district organized by land owners to drain their lands and to protect them from overflow. Such a corporation can sue and be sued, and for any injury to its levees or drains by the wrongful act of another it may sue, but for injury to the lands of individual owners it cannot recover. If by the wrongful act of a third person water should be diverted so as to overflow such lands without injury to the levees or drains of the district, it is not perceived how such district could maintain an action for injury to the lands. So in this case, to permit the company to recover for an injury to the water power would be to permit it to recover for injuries not sustained by it, but by others.

It is contended, however, that this clause in section 4 of appellant's charter, "and generally to do such other acts and things for the preservation and maintenance of said water power as the board of directors may deem necessary and proper," gives general authority to the company to protect, preserve and maintain such water power and to do whatever they may deem necessary and proper for the purpose, including the bringing of all necessary legal actions. We cannot so interpret this clause of the section. In the first place, it must be confined within the general scope and purposes of the whole act, which do not include everything which might be deemed necessary for the preservation and maintenance of such water power. It is clear the company had no power to purchase or acquire other water rights so as to increase the amount of water and thereby the inches of water power, and by parity of reasoning it had no power to prevent riparian proprietors from using the water of the river to such excess as to materially diminish the amount flowing to the dam or into the race-ways. Cer-

tain means and appliances devised by the owners to preserve their water power were committed to the charge of the company. It was also made its duty to repair and regulate these appliances, and all that the law-making power intended by the general clause in question was that the company should have the power, and that it should be its duty, to do such other acts and things, *of a similar kind or character*, to preserve and maintain such water power. The doctrine *ejusdem generis* is applicable, and while the act must be given a liberal construction for the enforcement of its provisions, as it provides, it cannot be so construed as to carry it beyond the general scope and purpose of it so clearly expressed in its different parts. The purposes the company was designed to serve were to preserve and maintain the physical means and appliances necessary to collect the water and convey it to the manufacturing establishments and industries represented by the holders of the stock, prevent waste of such water power by any of such persons or industries, secure a just and equitable distribution of the water power among those entitled to use it, and apportion the accruing expenses ratably among those who should contribute thereto, and enforce the payment thereof. We see nothing in the act creating it to indicate the legislative intent to clothe it with power to engage in litigation respecting the rights of the city, as the owner of lands extending to the center line of the river, to use the waters of the stream. To hold otherwise would give to the general words of the clause above quoted greater significance than the particular words employed to define the purposes and powers of the corporation, and would not only reverse the well established rules of construction and confer powers on this corporation never contemplated by the legislature, but would leave such powers without any well defined bounds.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*