### EX PARTE FRED ROQUEMORE.

No. 825.    Decided November 9, 1910.

**1.—Sunday Law—Baseball—Statutes Construed—Habeas Corpus.**

Under Article 199, of the Penal Code, it is not unlawful for the proprietor of a base-ball park to permit a game to be played therein on Sunday, or to cause the game to be played on Sunday therein and charge an admission fee; and where relator was convicted upon such state of facts in the lower court, and did not appeal, he could nevertheless sue out the writ of habeas corpus, as the conviction was void.

**2.—Same—Ejusdem Generis—Statutes Construed—Legislative Intent.**

The general term "and such other amusements as are exhibited and for which an admission fee is charged," as used in the statute, cannot be applied to baseball under the doctrine of *ejusdem generis;* as baseball is not of the kind or class of amusements particularly named in the statutes; especially when viewed in the light of contemporaneous legislative history.

From Nacogdoches County.

Original application for writ of habeas corpus asking release from a conviction of a violation of the Sunday law by permitting the game of baseball to be played for public amusement and charging admission fees thereon.

The opinion states the case.

*King & King,* for relator.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.—Cited cases in opinion.

RAMSEY, JUDGE.—It is shown by the record in this case that relator was charged by complaint filed in the Corporation Court of the city of Nacogdoches with being the manager and proprietor of a place of public amusement, to wit: a baseball park in the city of Nacogdoches, and that on the 10th day of July, A. D. 1910, said day being Sunday, he did then and there unlawfully and wilfully open and permit said baseball park and ground to be open for public amusement, and did then and there on said Sunday, and date above alleged, permit a baseball game to be exhibited and played on said baseball park and ground for public amusement, and for the admission to which a fee was charged.

The prosecution is based upon article 199 of the Penal Code. Relator, it appears, was tried and convicted in said Corporation Court, and gave notice of appeal from said judgment to the County Court of Nacogdoches County, but omitted or failed to perfect his appeal as by law provided. Soon thereafter application was made for writ of habeas corpus to the county judge of said county, which was presented on the 18th day of August of this year. This was refused by the county judge, and there was endorsed on the application submitted to him the following: "The foregoing petition for habeas corpus being this day presented to me, and after considering the same, I am of the opinion that the same should be refused and the matter referred to the Court of Criminal Appeals, inasmuch as there is some doubt in the mind of the county judge as to whether or not article 199 of the Penal Code includes such character of offense." Thereupon this application was presented to the presiding judge of this court, and a writ of habeas corpus was by him directed to issue, and was made returnable before us on October 5, 1910, relator, pending the writ, being admitted to bail in the sum of three hundred dollars.

We are met at the threshold of the case with the suggestion by our able Assistant Attorney-General that the writ of habeas corpus can not apply in this character of proceeding; that it is sought merely as a method of appeal or supersedeas, and under the authority of the cases of Ex parte Scwartz, 2 Texas Crim. App., 74; Perry v. State, 41 Texas, 488; Ex parte Dickerson, 30 Texas Crim. App., 448, and the still later case of Ex parte Cox, 53 Texas Crim. Rep., 240, can not be entertained, and that the judgment of inferior courts can only be attacked by writ of habeas corpus for such illegalities as render them void: Ex parte Gibson, 31 Cal., 619, and that the erroneous judgments of inferior courts having jurisdiction of the subject matter and of the person can not be successfully attacked upon habeas corpus, unless they are so far erroneous as to be absolutely void. 9 Am. & Eng. Enc. of Law, 222. And that it is only when the proceeding is void that the writ of habeas corpus may be resorted to. Ex parte Slaren, 3 Texas Crim. App., 662, and Ex parte Boland, 11 Texas Crim. App., 159.

That these general rules obtain there can be no sort of question, but, as we believe, they have no application to the case here. The sole matter in controversy in this case is as stated in the agreed statement of facts: "Whether or not the complaint hereinbefore mentioned charged an offense under the facts herein agreed upon in view of article 199 of the Penal Code of this State, or whether the facts heretofore agreed upon make an offense denounced by article 199." So that, we are confronted with the question as to whether in this State it is unlawful for one, the proprietor of a baseball park, to permit a game to be played therein on Sunday, or to cause a game to be played on Sunday therein where an admission fee is charged. If there is no such law in this State, then manifestly no offense is charged and none could be charged upon any state of case made by this record, or that could be predicated upon any state of facts reasonably applied to the condition of relator.

Counsel for relator who prosecuted the case in the Corporation Court, among other things, say: "It is obvious that article 196 to 200 are based upon the commandment, 'Remember the Sabbath day to keep it holy; six days shalt thou labor and do all thy work, but the seventh day is the Sabbath of the Lord thy God; in it thou shalt not do any work, thou nor thy son, nor thy daughter, thy manservant, nor thy maidservant, nor thy cattle, nor thy stranger that is within thy gates; for in six days the Lord made heaven and earth, the sea and all that in them is and rested the seventh day, wherefore the Lord blessed the Sabbath day and hallowed it.' "—Exodus xx, 9-10-11.

That it would be competent for the Legislature to prohibit a baseball game on Sunday may be true. As was said in Bloom v. Richards, 2 Ohio St., 387: "Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be overlooked. It was within the constitutional competency of the general assembly to require this cessation of labor, and to name the day of rest. It did so by the act referred to, and, in accordance with the feelings of a majority of the people, the Christian Sabbath was very properly selected." We are not, therefore, concerned here with the issue or question as to whether the Legislature could enact a law prohibiting baseball on Sunday, but rather with the question as to whether they have so enacted. To determine this correctly recourse must be had to article 199 of the Penal Code, on which reliance is had by the State to hold relator. This article is as follows:

"Any merchant, grocer, or dealer in wares or merchandise, or trader in any business whatsoever, or the proprietor of any place of public amusement, or the agent or employe of any such person, who shall sell, barter or permit his place of business or place of public amusement to be open for the purpose of traffic or public amusement on Sunday, shall be fined not less than twenty nor more than fifty

dollars. The term place of public amusement shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives and places of like character with or without fees for admission."

It will be noted that this article undertakes to name and designate the place of public amusement, and it is said that it shall be so construed as to mean circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged, and shall also include dances at disorderly houses, low dives, and places of like character with or without fees for admission. That baseball is not specifically named, of course, is clear. What are we to understand by the general term "and such other amusements as are exhibited and for which an admission fee is charged?" Clearly, we think amusements of a like or similar character. This seems to have been the construction given to a similar statute by many courts. It has been said that "baseball is not prohibited by a statute which provides for the punishment of anyone convicted of horse racing, cock fighting, or playing at cards or game of any kind on Sunday." State v. Prather, 79 Kan., 513, 100 Pac., 57, 21 L. R. A. (new series), 23. To the same effect see Neet, 157 Mo., 527, 57 S. W., 1025, 80 Am. St. Rep., 638; St. Louis Agricultural Assoc. v. Delano, 108 Mo., 217. In discussing this matter in the case of State v. Prather, supra, the court, referring to the meaning of the word "game" in the statute under consideration, said: "In the broad sense in which the word is often used it includes baseball. Giving to the language this interpretation, the statute necessarily applies to every contrivance or institution which falls within the general term. This construction would make the statute apply to every game, to authors, whist, chess, checkers, backgammon, and cribbage, even when played within the privacy of one's home, and to croquet, basketball, tennis and golf, whether played in public or on private grounds. It hardly seems probable that it could have been the intention of the Legislature to enact a provision so drastic in its terms as to make the playing of all games on Sunday misdemeanors without regard to their character, and with no limitations or reservations with respect to the place where or the circumstances under which they might be indulged in. The doctrine of *ejusdem generis* is applied in all cases where there is doubt as to the intention of the Legislature, and, as a rule of statutory construction, is stated to be that where general words follow particular ones in a statute the general words will be limited in their meaning or restricted to things of like kind and nature with those specified. . . . The particular words of the statute create a class or species of games which, in the popular mind, are associated with gambling. Baseball, on the other hand, is looked upon as entirely devoid of this and like objectionable features. . . . It is within the power of the Legislature to make

the playing of baseball on Sunday a misdemeanor, but if such be the purpose, apt words can readily be employed which will express that intention and leave no room for doubt."

In the case of Ex parte Muckenfuss, 52 Texas Crim. Rep., 467, we had occasion to review and consider at length the rule of construction applicable to a statute such as this. We there said: "It is a familiar rule that where general words follows particular and specific words, the former must be confined to things of the same kind. It has been held also, that this rule is especially applicable in the interpretation of statutes ·defining crimes and regulating their punishment. See McDade v. People, 29 Mich., 50, citing American Transportation Co. v. Moore, 5 Mich., 368; Hawkins v. Great W. R. R. Co., 17 Mich., 57, 97 Am. Dec., 179; Matter of Ticknor's Est., 13 Mich., 44; Phillips v. Poland, L. R. 1 C. P. 204; Hall ,v. State, 20 Ohio, 7; Daggett v. State, 4 Conn., 60, 10 Am. Dec., 100; Chegaray v. Mayor, etc., 13 N. Y., 220; 1 Bish. Crim. Law, paragraph 149; Dwarris, 621.

"The doctrine itself is thus well expressed in Lewis' Sutherland Statutory Construction: When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of *ejusdem generis*. Some judicial statements of this doctrine are here given. 'When general words follow an enumeration of particular things, such words must be held to include only such matters or objects as are of the same kind as those specifically enumerated.' 'The rule is, that where words of a particular description in a statute are followed by general words, that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases of like kind to those designated by the particular words.' 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and ·duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear, if standing alone, but as related to the words of more definite and particular meaning with which they are associated.' The rule is supported by numerous cases. Hurd v. McClellan, 14 Colo., 213, 23 Pac., 792; Washington Elec. Vehicle Trans. Co. v. District of Columbia, 19 App. Cas. (D. C.), 462; Balkcom v. Empire Lumber Co., 91 Ga., 651; Grier v. State, 103 Ga., 428, 30 S. E., 255; Davis v. Dougherty County, 116 Ga., 491, 42 S. E., 764; Misch v. Russell, 136 Ill., 22, 26 N. E., 528, 12 L. R. A., 25; Ambler v. Whipple, 139 Ill., 311, 28 N. E., 841, 32 Am. St. Rep., 202; Webber v. Chicago,

148 Ill., 313, 36 N. E., 70; Cecil v. Green, 161 Ill., 265, 43 N. E.,
1105, 32 L. R. A., 566; Elgin Hydraulic Co. v. Elgin, 194 Ill., 476,
62 N. E., 929; Chicago Union Traction Co. v. Chicago, 199 Ill.,
484, 65 N. E., 451; Marquis v. Chicago, 27 Ill. App., 251; Cairo
v. Coleman, 53 Ill. App., 680; McKeon v. Wolf, 77 Ill. App., 325;
Philips v. Christian County, 87 Ill. App., 481; Stites v. Wiggins
Ferry Co., 97 Ill. App., 157; Roberts v. Detroit, 102 Mich., 64,
60 N. W., 450, 27 L. R. A., 572; Rhone v. Loomis, 74 Minn., 200,
77 N. W., 31; State v. Barge, 82 Minn., 256, 84 N. W., 911, 111
L. R. A., 428; Leinkauf v. Barnes, 66 Miss., 207, 5 So., 402; State
v. Cannon, 106 Mo., 488, 17 S. W., 660; Greenville Ice & C. Co. v.
Greenville, 69 Miss., 86, 10 So., 574; State v. Dinisse, 109 Mo., 434,
19 S. W., 92; State v. Schuchmann, 133 Mo., 111, 33 S. W., 35, 34
S. W., 842; State v. South, 136 Mo., 673, 38 S. W., 716; Ruckert v.
Grand Ave. Ry. Co., 163 Mo., 260, 63 S. W., 814; Bachman v. Brown,
57 Mo. App., 68; McCutcheon v. Pacific R. R. Co., 72 Mo. App.,
271; State v. Ennis, 79 Mo. App., 12; Kine v. Crider, 6 Pa. Dist.,
688; In re Barre Water Co., 62 Vt., 27, 20 Atl., 109, 9 L. R. A.,
195; American Manganese Co. v. Va. Manganese Co., 91 Va., 272,
21 S. E., 466; People v. Dolan, 5 Wyo., 245, 39 Pac., 752; Baker
v. Crook County Com'rs, 9 Wyo., 51, 59 Pac., 797; United States v.
Wilson, 58 Fed., 768; Bruen v. People, 206 Ill., 417, 69 N. E., 24;
Lassen v. Karrer, 117 Mich., 512, 76 N. W., 73; State v. Krueger,
134 Mo., 262, 35 S. W., 604; Edgecomb v. His Creditors, 19 Nev.,
149, 7 Pac., 533.

"This precise rule has received endorsement in our own courts,
Murray v. State, 21 Texas Crim. App., 620. In that case Judge
White says: 'The leading and controlling rule in the construction of
statutes, in fact, the primary and fundamental one, is to interpret
them according to their true meaning and intent. To ascertain this
intent it is the duty of the court to find, by other established rules,
what was the fair, natural, and probable intent of the Legislature.
For this purpose the language employed in the act is first to be
resorted to. If the words employed are free from ambiguity and
doubt, and express plainly, clearly and distinctly the intent, accord-
ing to the most natural import of the language, there is no occasion
to look elsewhere. (People v. Schoonmaker, 63 Barbour, N. Y., 44,
citing McKlusky v. Cromwell, 11 N. Y., 593.)

" 'Another good rule of construction is that, "when a particular
class is spoken of, and general words follow, the class first men-
tioned is to be taken as the most comprehensive, and the general
words treated as referring to matters *ejusdem generis* with such
class." (Matter of Hermance et al., 71 N. Y., 487, citing Arch. of
Canterbury's case, 2 Coke, 46a; Lyndon v. Standbridge, 2 H. & N.,
51; Reg. v. Edmundson, 2 E. & E., 83; Gibbs v. Lawrence, 30 L. J.,
ch. 170; Broom's Legal Max., 625.)' "

Following this construction, it occurs to us that baseball is not in

fairness included in this statute. It is elementary before a citizen can be punished as a criminal, that the offense must be clearly defined by statute, and an appropriate penalty affixed thereto. Further, it is a rule of construction well known that in undertaking to fix and place meaning upon statutes, we should do so in the light of contemporaneous history, and in reference to the habits and activities of our people. It is known, of course, that baseball is the most generally practiced, patronized and approved of all the games of exercise, and that it is the cleanest and fairest of all manly sports, and excites rivalry in the youths of our land, and that every village and hamlet has its favorite nine, and that in every village and hamlet many ambitious youths dream of the day when they shall equal if not excel Mathewson, Speaker, Cobb, Napoleon Lajoie and Honus Wagner. It is also well known that for many years, in many of our larges cities, baseball on Sunday has been not only frequently but continuously played where an admission fee was charged. Now, it would have seemed, in the light of these facts, that if it had been the legislative intent to condemn this form of amusement and include it within the statute under consideration, that it would have been an easy matter to have done so in express words, and not left the matter at least clouded in doubt. Again, it is worthy to be remembered, as a part of the political history of the times, that many efforts have been made, within the last few years, in the Legislature, to make the playing of baseball on Sunday an offense, without success. It would seem that if it were already an offense that these efforts would not have been put forth. We have not felt it necessary, and indeed it would be out of place, to express any view as to whether baseball should be prohibited on Sunday, but have contented ourselves with deciding that under the statute as it now stands it has not been prohibited.

Believing that the law under which relator is sought to be held does not make the act set forth an offense, it is ordered that he be and is hereby discharged.

*Relator discharged.*