### Ex Parte William Lingenfelter.

No. 1267. Decided November 29, 1911.

Rehearing denied December 20, 1911.

**1.—Sunday Law—Public Amusement—Motion Pictures.**

Where the defendant was charged with then and there being the proprietor, agent and employee of a place of public amusement, to wit: what is commonly known as a picture show, the same being in the nature of a theater where motion pictures are displayed, did then and there unlawfully and wilfully open and permit said place of public amusement to be open for public amusement on Sunday (stating date), and did then and there on said Sunday permit a performance to be given and exhibited in said place of public amusement to wit: a display of said motion pictures for public amusement, and for admission to which a fee was charged, against the peace, etc., the same charged an offense under Article 199, Penal Code. Davidson, Presiding Judge, dissenting.

**2.—Same—Statutes Construed—Moving Pictures.**

Moving picture shows are embraced within the provision of Article 199, Penal Code, and come under the term "and such other amusements."

**3.—Same—Statutes Construed—Ejusdem Generis.**

When general words follow specific words, the doctrine of ejusdem generis applies, which term means of similar character or species; and when applied under Article 199, Penal Code, the words "and such other amusements" include a moving picture show, as being of the same class as theaters.

**4.—Same—Theater—Moving Picture Show.**

A moving picture show can not be said to be a theater, as that term is generally understood, but it is an exhibition of a similar character and kind and of the same species, and thereby comes within the scope of the statute and is prohibited thereby.

**5.—Same—Legislative Function—Judicial Functions.**

When the Legislature by law provided that theaters "and such other amusements" are prohibited on Sunday, they meant something besides theaters or they would not have used the additional words "and such other amusements;" these words as judicially limited mean amusements of the same species and of similar kind and character, and the court is not authorized to ignore entirely these words of general import, which follow words of special designation. Following ex parte Muckenfuss, 52 Texas Crim. Rep., 467; ex parte Roquemore, 60 Texas Crim. Rep., 282. Davidson, Presiding Judge, dissenting.

**6.—Same—Statutes Construed—Picture Exhibitions.**

All moving picture exhibitions, of every character and kind, are prohibited from being exhibited on Sunday under Article 199, Penal Code.

**7.—Same—Theaters—Picture Shows.**

A theater is but a reproduction of some play or scene by acting, by pantomimes or by tableau; a moving picture exhibition is also but a reproduction of these same scenes and plays, and both come under the inhibition of the statute. Davidson, Presiding Judge, dissenting.

From McClennan County.

Original habeas corpus proceeding, asking release from a commitment issued out of the Corporation Court of the city of Waco, on a conviction of violating the Sunday law, assessing a fine of $20.

The opinion states the case.

*J. N. Gallagher, S. E. Stratton, Dougherty & Gordon, Lively, Nelms & Adams, W. L. Eason,* for relator.—Many opportunities have presented themselves to the Legislature to amend this law in order to include moving picture exhibitions on Sunday, but since the Legislature has not seen fit to do so, we reiterate the words of the Supreme Court of Montana, in the case of the State v. Penny, 111 Pac. Reporter, 727; Block v. City of Chicago, 87 N. E. Rep., 101.

The moving picture business is a separate, distinct and well established branch of amusement. Citing cases supra.

We think, and respectfully insist, that the great weight of authority limits the general words of the statute, not to the entire genus or species of the particular things prohibited, but limits the application of the rule to the same class or kind as the specific things prohibited, and the rule is so limited by Mr. Sutherland. In our opinion, there is a wide difference between including an entire genus or species when applied to particular things prohibited, and in the limitation of the general words to the class or kind of the specific things prohibited in a statute. We do not intend to be understood, however, that a moving picture show is included even in the same genus or species as a theater: Smythe v. State, 17 Texas Crim. App., 244; 4 Words and Phrases, 3083; Oil v. Rowley, 69 Ill., 469; 7 Words and Phrases, 6599; Chegarey v. Mayor, 13 N. Y., 220.

Moving picture exhibitions are not confined to a reproduction of farces, dramas, tragedy, or theatrical performances, but may and do reproduce scenes not susceptible of being staged, such as outdoor performances: Ex Parte Roquemore v. State, 60 Texas Crim. Rep., 282.

Certainly it could not have been the intention of the Legislature to prohibit all amusements on Sunday, because if it had so intended, it would have said so in so many words: Ex Parte Hull, 110 Pac., 256.

In Ex Parte Roquemore, supra, it was held that it was lawful for baseball to be played on Sunday and to charge an admission fee to witness the game, but in this case, the court holds that it is a violation of the law to reproduce this same game on canvas. In other words, that the game itself is lawful, but that it is unlawful to photograph

this game and exhibit it to the public and charge an admission fee therefor; and this conclusion has been reached by a construction of the same statute: Ex Parte Roquemore, supra.

Thus, also, no one would contend that automobile races on Sunday, and for which an admission fee is charged, would be a violation of article 199, Penal Code, and be prohibited by the general words in the statute "and such other amusements," and yet, in the instant case, it would be unlawful to exhibit or reproduce the pictures of the original on canvas. No one would contend that automobile races are not amusements, and if an admission fee is charged, public amusements, and still such an amusement, though public, would not be prohibited by the general wording in our statute, "and such other amusements." Citing authorities, supra.

It is also worthy to note that automobile races and the baseball amusement and many others, are not susceptible of being staged and, therefore, can not be said to be of a like kind or class as a theater.

An aviation exhibition on Sunday, for which an admission fee is charged, would not be a violation under article 199, Penal Code, and yet the reproduction of this scene under the instant case would be a violation of law.

No one would contend that Colonel Roosevelt's Hunting Trip in Africa is susceptible of being staged, and yet the reproduction of these scenes, on canvas, on Sunday, by a moving picture exhibitor would be a violation of the law. Sutherland on Statutory Construction, 1 ed., secs. 268-281.

Let us also suggest the following illustration to determine whether or not a moving picture exhibition is of like kind or class as a theater. Suppose that a testator would leave at his death, a certain sum of money for the purpose of endowing and providing for the theaters "and such other amusements" of the city of Waco, for which an admission fee is charged. We do not think that it could be seriously contended that this request would include relator. . . . If this be true in the construction of wills, how much more must it be true in construing a criminal statute?

We do not think that the fact that the pictures are in motion, is of any serious value in determining the question before the court. If the pictures were thrown upon canvas by means of a flashlight, and remained stationary, like a magic lantern performance, it occurs to us that it would be, and is the same sort of an exhibition as a moving picture exhibition, and yet, a magic lantern performance would not be included in the general words "and such other amusements," when applied ejusdem generis with "theater." . . . In the last analysis, the moving picture exhibition is but an improvement on the old magic lantern exhibition—is, in fact, a mechanical contrivance.

It is also interesting to note that moving picture films are now in vogue in the schools of our country and are exhibited for the educational and moral advancement of the children and youths of our coun-

try, and such exhibitions have become so popular and instructive and have taken such hold by reason of their usefulness in every field and among all classes, that these films are now, in fact, used in many churches to illustrate sermons on Sunday. . . . It is worthy to note that churches using these moving picture films on Sunday, do not think, when exhibiting biblical or religious pictures, that they are inviting their respective members to view a performance or amusement in a like class or kind as a theater. Authorities cited above.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Relator was prosecuted under the following complaint in the Corporation Court of the city of Waco, to wit: "Personally appeared before the undersigned authority, J. P. Moore, who on oath, says that W. M. Lingenfelter, in the city of Waco, in said State of Texas, on or about the 16th day of April, A. D., 1911, who was then and there the proprietor, agent and employe, of a place of public amusement, to wit: what is commonly known as a picture show, the same being in the nature of a theater where motion pictures are displayed, did then and there unlawfully and willfully open and permit said place of public amusement to be open for public amusement on Sunday, said 16th day of April, 1911, then and there being Sunday, and did then and there on said Sunday, permit a performance to be given and exhibited in said place of public amusement, to wit, a display of said motion pictures, for public amusement, and for admission to which a fee was charged, against the peace and dignity of the State."

When tried, relator was adjudged guilty, and his punishment assessed at a fine of $20.

This prosecution was brought under article 199, of the Penal Code, which, as applicable to this offense, reads as follows:

"Article 199. Any proprietor of any place of public amusement, or the agent or employe of any such person, who shall permit his place of public amusement to be open for the purpose of public amusement on Sunday, shall be fined not less than twenty nor more than fifty dollars. The term, place of public amusement, shall be construed to mean circuses, theaters, variety theaters *and such other amusements* as are exhibited and for which an admission fee is charged."

When relator was convicted, he applied to Hon. Richard I. Munroe, judge of the 54th Judicial District, for a writ of habeas corpus, which was refused, when an application was made to Hon. W. L. Davidson, presiding judge of this court, who granted the writ.

The contention of relator is that the complaint charges no offense under the Penal Laws of this State, and if this be true, of course, he would be entitled to be discharged. Under the agreement of counsel

Vol. LXIV Crim.—3.

for relator and the city attorney of the city of Waco, the case was submitted on the following agreed statement of facts:

"It is agreed between the State and defendant, for the purpose of this case only, that the defendant, William Lingenfelter, is the proprietor and manager of a moving picture show located near the corner of 6th and Austin Streets in the city of Waco, McLennan County, Texas, and known as 'The Ideal.'

"It is further agreed that the said William Lingenfelter, on Sunday, the 16th day of April, 1911, kept said picture show open to the public and gave an exhibition of moving pictures therein and charged an admission fee of five cents for each person who entered said place and saw said exhibition.

"Said moving picture show was then and there conducted in an ordinary building about twenty-five feet wide and one hundred feet deep. At the rear of said building, a screen of canvass was placed, upon which said pictures were exhibited by reflection from the moving picture machine hereinafter referred to. Near the front of the building, was an elevated stand upon which was situated an instrument commonly known as a moving picture machine and the pictures upon the screen were produced by running a long film, commonly known as a reel, through said moving picture machine, which caused the exhibition of pictures upon said screen. Said film, or reel, consisted of a great number of separate negatives and the running of the same through the machine, produced to the eye the appearance of the persons in said pictures moving to and fro as in case of ordinary moving picture shows.

"There was no stage in said room and there was no vaudeville performances and no actors and no exhibition except the said pictures on said screen.

"The said pictures so exhibited were representations of scenes in the life of Christ, one of said scenes representing the Last Supper, another the Garden of Gethsemane, and others representing other scenes in the life of Christ.

"During said exhibition, a man stood near said screen and explained the several pictures to the audience as they were exhibited.

"Said place is run exclusively as a moving picture show and there is no exhibition of vaudeville or other entertainment in the ordinary every-day operation of the same, the sole entertainment furnished being the exhibition of such moving pictures.

"It is agreed that the picture show complained of in this case, and run by defendant, is an ordinary 'moving picture show' without vaudeville or other attractions, and the court may take judicial cognizance of the nature and character of such shows.

"It is further agreed that this case shall be submitted to the court on this agreed statement of facts without other evidence, and that the sole issue to be determined is whether or not the complaint in this case charges an offense against the law or whether or not the above

facts constitute a violation of article 199, of the Penal Code of the State of Texas."

Under the agreement, it will be noticed that the only question for this court to decide is "whether or not the complaint charges an offense against the law," that is, is a moving picture show embraced within the provision of article 199 of the Penal Code above quoted? Counsel for relator earnestly insist that it is not embraced within the provisions of that article, and have filed an able brief in support of their contention, and in the beginning, lay down the following propositions and cite the following authorities:

"1. No person shall be punished for any act or omission unless the same is made a penal offense and a penalty affixed thereto by the written law of this State. 2. Article 199, of the Penal Code, having provided that the term 'place of public amusement,' as therein used, shall be construed to mean circuses, theatres, variety theatres and such other amusements as are exhibited and for which an admission fee is charged, no public amusement whatever though exhibited on Sunday, and a fee charged for admission thereto, is prohibited by said article, except those specifically named in said article, and such as are of the same kind and class as those named therein. 3. A moving picture show, pure and simple, without vaudeville or other attractions, is not a circus, theatre or variety theater. 4. Such a moving picture show is not of the same kind or class of amusements as circuses, theaters, or variety theaters. 5. The exhibition of moving pictures on Sunday and the charging of an admission fee therefor, not being prohibited by said article 199, or any other article of the Penal Code of the State of Texas, the conviction of applicant in the Corporation Court was without authority, and unlawful, and his confinement by virtue of said judgment, was unlawful, and he is entitled to be discharged from such unlawful restraint and custody.

"Authorities on first proposition: Penal Code, arts. 1, 3, 4, 5 and 6. On second proposition: Ex. Parte Roquemore, 60 Texas Crim. Rep., 282, 131 S. W. Rep., 1101; Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W. Rep., 1131; Crow v. State, 6 Texas, 334; Ex Parte Hull, 110 Pac. 256; State v. Prather, 100 Pac. 57; Ex Parte Neet, 41 Texas Crim. Rep., 621, 57 S. W. Rep., 1025. On third proposition: State v. Cody, 120 S. W. Rep., 267; State v. Penny, 111 Pac., 727; Bloch v. City of Chicago, 87 N. E., 1011; 8th Words & Phrases, 6937-8. On fourth proposition: 8th Words & Phrases, 6937-8; People v. Lynch, 108 N. Y. Sup., 209; Keith & Proctor v. Bingham, 108 N. Y. Sup., 205; People v. Hemleb, 111 N. Y. Sup., 690; William Fox Amusement Co. v. McClellon, 114 N. Y. Sup., 594; Edwards v. McClellon, 118 N. Y. Sup., 181. On fifth proposition: Ex Parte Roquemore, 60 Texas Crim. Rep., 282, 131 S. W. Rep., 1101; Crow v. State, 6 Texas, 334; Ex Parte Neet, 41 Texas Crim. Rep., 621, 57 S. W. Rep., 1025."

These propositions bring the matter properly before us for our decision, and we will discuss them in their order.

1. That no person can be punished for any act or omission unless the same is made a penal offense by the laws of this State, need not be discussed. Article 3, of the Penal Code, provides: "In order that the system of penal law in force in this State may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, unless the same is made a penal offense, and a penalty affixed thereto by the written law of this State." This is the settled law of this State.

2. Under this proposition is brought up the construction to be placed on the language of article 199, and especially the words *"theaters and such other amusements."* We are cited to Ex Parte Roquemore, decided by this court in 60 Texas Crim. Rep., 242, 131 S. W. Rep., 1101, and Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W. Rep., 1131. In the Roquemore case it is held:

"It will be noted that this article undertakes to name and designate the place of public amusement, and it is said that it shall be so construed as to mean circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged, and shall also include dances at disorderly houses, low dives, and places of like character, with or without fees for admission. That baseball is not specifically named, of course, is clear. What are we to understand by the general term, 'and such other amusements as are exhibited and for which an admission fee is charged?' Clearly, we think amusements of a like or similar character. This seems to have been the construction given to a similar statute by many courts. It has been said that 'baseball is not prohibited by a statute which provides for the punishment of any one convicted of horse racing, cock fighting, or playing at cards or game of any kind on Sunday.' State v. Prather, 79 Kan., 513, 100 Pac., 57, 21 L. R. A., 23, 131 Am. St. Rep., 339. To the same effect see Neet, Ex Parte, 157 Mo., 527, 57 S. W., 1025, 80 Am. St. Rep., 638; St. Louis Agricultural Ass'n. v. Delano, 108 Mo., 217, 18 S. W., 1101. . . .

"In the case of Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W. Rep., 1131, we had occasion to review and consider at length the rule of construction applicable to a statute such as this. We there said: 'It is a familiar rule that, where general words follow particular and specific words, the former must be confined to things of the same kind. It has been held, also, that this rule is especially applicable to the interpretation of statutes defining crimes and regulating their punishment. See McDade v. People, 29 Mich., 50, citing American Transportation Co. v. Moore, 5 Mich., 368; Hawkins v. Great W. R. Co., 17 Mich., 57, 97 Am. Dec., 179; Matter of Ticknor's Estate, 13 Mich., 44; Phillips v. Poland, L. R., 1 C. P., 204; Hall v. State, 20 Ohio, 7; Daggett v. State, 4 Conn., 60, 10 Am. Dec., 100; Chegaray

v. Mayor, etc., 13 N. Y., 220; 1 Bish. Crim. Law, par. 149; Dwarris, 621. The doctrine itself is thus well expressed in Lewis' Sutherland, Statutory Construction: 'When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of ejusdem generis.' Some judicial statements of this doctrine are here given. 'When general words follow an enumeration of particular things, such words must be held to include only such matters or objects as are of the same kind as those specifically enumerated.' 'The rule is that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases of like kind to those designated by the particular words.' 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear, if standing alone, but as related to the words of more definite and particular meaning with which they are associated.' The rule is supported by numerous cases. (Citing many authorities.) . . .

"This precise rule has received indorsement in our own courts. Murray v. State, 21 Texas Crim. App., 620, 2 S. W. Rep., 757, 57 Am. Rep., 623. In that case, Judge White says: 'The leading and controlling rule in the construction of statutes, in fact the primary and fundamental one, is to interpret them according to their true meaning and intent. To ascertain this intent, it is the duty of the court to find, by other established rules, what was the fair, natural, and probable intent of the Legislature. For this purpose, the language employed in the act is first to be resorted to. If the words employed are free from ambiguity and doubt, and express plainly, clearly and distinctly the intent, according to the most natural import of the language, there is no occasion to look elsewhere. People v. Schoonmaker, 63 Barb. (N. Y.), 47, citing McCluskey v. Cromwell, 11 N. Y., 601.' Another good rule of construction is that, 'when a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters ejusdem generis with such class. Matter of Hermance et al., 71 N. Y., 481, citing Arch. of Canterbury's Case, 2 Coke, 46a; Lyndon v. Stanbridge, 2 K. & N., 51; Reg. v. Edmundson, 2 E. & E., 83; Gibbs v. Lamon, 30 L. J., ch. 170; Broom's Legal Max., 625."

We are also referred to the case of Ex Parte Hull, 110 Pac., 256,

which is an Idaho case. In that case, relator was prosecuted under a statute · which provides: "It shall be unlawful for any person or persons to keep open on Sunday any theater, playhouse, dance house, race track, merry-go-round, circus or show, concert saloon, billiard or pool room, bowling alley, variety hall, or any such place of public amusement." In that case the facts show that relator operated a "scenic railway," and it was held not within the statute, merely holding, as was held by this court in the Roquemore case, it must be of similar character or kind as those mentioned in the statute. It says, in speaking of the words, "or any such place of public amusement— the word 'such' has a very definite and distinct meaning. It is defined by the lexicographers as: of that kind; of the same or like kind; identical with or similar to something specified or implied; being the same as what was mentioned or indicated; being the same in quality; having the quality specified," etc., and then holds that a "scenic railway" is not of the character or kind, nor similar to those things mentioned in the statute, and of course, not within its provisions.

The case of State v. Prather, 100 Pac., 57, is a Kansas case, and simply holds that baseball is not prohibited by a statute which reads: "Every person who shall be convicted of horse racing, cockfighting, or playing at cards, or games of any kind, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor. The court held that the words, "game of any kind," following the words, "playing at cards," meant games of the same character or kind, such as games of chance or of kindred nature, whether played with dominoes or similar things, and did not include athletic exercises, such as baseball, football, etc.

In Ex Parte Neet, 57 S. W. Rep., 1025, a Missouri case, it was held, in construing a statute reading as follows: "Every person who shall be convicted of horse racing, cock fighting, or playing at cards, or games of any kind, on the first day of the week, commonly called Sunday, shall be guilty of a misdemeanor, and fined not exceeding fifty dollars," that baseball playing was not prohibited, saying:

"The doctrine of ejusdem generis is as rock-ribbed in the law of this State as any principle ever announced. As applied to penal statutes especially, it is only a humane doctrine, and accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law. It observes the respective rights of the different co-ordinate branches of the government, by requiring the Legislature to enact the laws, and the judiciary to enforce, but not create, the laws, not even by construction. Baseball does not belong to the same class, kind, species, or genus as horse racing, cock fighting, or card playing."

Thus it is seen that all the cases cited under this proposition, but reiterate the doctrine announced by this court in the Roquemore and Muckenfuss cases, that is, in construing a statute, when general words

follow specific words, the doctrine *ejusdem generis* applies, which term means, according to all the law writers, of similar character or species, and as applicable to this statute, would make it read: circuses, theaters, variety theaters, or amusements of similar character and kind, or of the same species, and if a moving picture show is included in that definition, it would be prohibited, otherwise it would not.    Ex Parte Leland, 1 Nott & McC., 460; Spalding v. People, 172 Ill., 40; Bills v. Putnam, 64 N. H., 554; Benton v. Benton, 56 Am. Rep., 512; State v. Broderick, 7 Mo. App., 19; Williams v. Williams, 16 Tenn., 20; State v. Williams, 2 Strob., 474; Com. v. Rice, 9 Metc. (Mass.), 253; State v. Schuchmann, 133 Mo., 111; Bucher v. Com., 103 Pa., 528; People v. White, 64 N. Y. App., 390; Powell v. Kempton, 2 Q. B. (England), 242; Severn v. Reg., 2 Can. Sup. Ct., 70; Bouvier's Law Dic., 1 vol., p. 638.

As to whether a moving picture show is of the same character or species as a theater, will be discussed by us under the fifth proposition of relator, as we are now discussing the authorities cited in relator's brief.

We will discuss the authorities cited under the third and fourth propositions together, as they are, in substance, the same.    We are referred to People v. Flynn, 108 N. Y. Sup., 208; People v. Lynch, 108 N. Y. Sup., 209; Keith & Proctor v. Bingham, 108 N. Y. Sup., 205; People v. Hemleb, 111 N. Y. Sup., 690; Fox Amusement Co. v. McClellan, 114 N. Y. Sup., 594; Edwards v. McClellan, 118 N. Y. Sup., 181; Weisblatt v. Bingham, 109 N. Y. Sup., 545, and in the brief, copious extracts are taken from the various opinions of that court in those cases. However, to thoroughly understand the extracts quoted, one must understand the question under discussion. By reference to those opinions, it will be seen they were discussing section 265 of the Code of that State, which reads: "Public sports and shows: All shooting, hunting, fishing, playing, horse racing, gaming or other public sports, exercises, pastimes or shows upon the first day of the week, and all noise disturbing the peace of the day on Sunday are prohibited." In construing this article, it is held not to apply to any character of indoor performances, but only to outdoor entertainments.    They hold that theatrical performances, moving picture shows, or any character of entertainment or exhibition *given in a house,* is not within this statute, but it applies to entertainments given out of doors. We have read each of these cases carefully, and their application to this case we fail to understand, except it again emphasizes the doctrine of ejusdem generis, in holding the statute referring to shooting, hunting, fishing, horse racing, etc., applies to only out of door exercises and exhibitions.    However, these decisions were not rendered by a court of final resort in that State, and all divisions of that court do not so hold.    In Moore v. Owen, 109 N. Y. Sup., 585, it is held that this statute does apply to shows whether in doors or out of doors, and in all the opinions of that court it is

held that a moving picture exhibition comes within the meaning of the word "show," and if the statute related to indoor entertainments, it would be prohibited under the statute.    Other branches of that court have held contrary to those cited by relator in addition to the case of Moore, supra.   For a list of them we refer to 114 N. Y. Sup., 598.   The court of final resort in that State has not passed on the question of whether this statute applies to indoor as well as outdoor performances, but all the cases cited by relator, and the other cases do hold that if the statute includes "indoor performances" as well as outdoor exhibitions, then moving picture shows are within the statute. While these decisions are by what is termed the Supreme Court, yet in New York, what is termed the "Supreme Court," sits in divisions, and is not a court of final jurisdiction as is our Supreme Court.   Appeal lies from their decisions to a court of final jurisdiction.   But as said before, we fail to see the application to our statute, as to whether moving picture exhibitions are within its terms, because that statute names certain specific things, and is not followed by general words as is our statute, and all hold that moving picture exhibitions are included in the term "show."

We are also referred to the case of State v. Penny, 111 Pac., 727, a Montana case, wherein the statute which prohibits any theater from being opened on Sunday is being construed, and the court holds:

"In the case of Moore v. Owen, 58 Misc. Rep., 332, 109 N. Y. Sup., 585, the court held that a moving picture exhibition was a 'show' within the meaning of a statute prohibiting shows on the first day of the week."   See Economopoulos v. Bingham (Sup.), 109 N. Y. Sup., 728.   But our statute does not prohibit the opening or maintaining of a 'show.'   It specifically mentions a 'theater,' which, as we have held, means a theatrical performance.   While the word 'show' may, and undoubtedly does, include a theatrical performance, the word 'theater' is not sufficiently comprehensive to include all 'shows.' "   This case further holds that a moving picture show is not a *theater,* but in that statute the word "theater" is not followed by the words "and such other amusements."   No one contends that a moving picture show is a theater, but a different question is presented when one comes to construe the other words in our statute, and which are not included in the Montana statute, and on the construction to be given these words, "and such other amusements," will determine this case.

Relator also cites us to the case of Bloch v. City of Chicago, 87 N. E., 1011, an Illinois case, in which was being discussed an ordinance of the city of Chicago, entitled: "An ordinance prohibiting the exhibition of obscene and immoral pictures and regulating the exhibition of pictures of the classes and kinds commonly known in mutoscopes, kinetoscopes, cinematographs and penny arcades."   The suit was brought to test the constitutionality of the ordinance because, as was alleged, it discriminated against the exhibition of moving pictures. The court holds:

"The purpose of the ordinance is to secure decency and morality in the moving picture business, and that purpose falls within the police power. It is designed as a precautionary measure to prevent exhibitions criminal in their nature and forbidden by the laws. Even the possession of an indecent picture is a crime under section 223 of the Criminal Code (Hurd's Rev. St., 1908, c. 38), and the offender may be confined in the county jail not more than six months or be fined not less than $100 nor more than $1000 for each offense. The ordinance applies to five and ten cent theaters such as the complainants operate, and which, on account of the low price of admission, are frequented and patronized by a large number of children, as well as by those of limited means who do not attend the productions of plays and dramas given in the regular theatres."

Thus it is seen that that court terms moving picture exhibitions "five and ten cent theaters," and it was held that the ordinance not applying to regular theatrical performances, but only to such as exhibited pictures, did not render it discriminatory, and the ordinance was upheld. This case, read as a whole, supports no contention of relator.

The only other case to which we are referred that would seem to have any application whatever, is the case of State v. Cody, 120 S. W. Rep., 267, which was a judgment rendered by the Court of Civil Appeals, for the Austin Judicial District. In that case the State sought to collect from Cody the circus tax, when Cody claimed the exhibition given by him was taxable under subdivisions 24, 25, art. 5049. The court, discussing the evidence at length, holds that the exhibition was not a circus, but was taxable under the other provisions of the statute, and does not pass on the question herein to be decided, whether or not it was an exhibition of a similar species, and is in point on no issue in this case, for there it was only discussed, what is a "circus" and not what is an entertainment of the same species or genus.

We are at loss to know why relator refers us to 8th Words & Phrases, 6937-8. On these pages it is discussed what is implied by the word "swear" or "sworn." If he meant to refer us to those pages of that work in which the word "such" is defined, it will be found in volume 7, pp. 6751-2-3-4, and to which we now refer.

This brings us to the fifth or last proposition of relator, and that is whether or not operating a moving picture exhibition on Sunday is prohibited by article 199. All the authorities cited by relator, in their last analysis, but announce the doctrine declared by this court in the Roquemore and Muckenfuss cases, and that is, if not specifically named in the statute, it must be an amusement of the same character, kind or species to be included in the words "such other amusements," and in this case it is specifically held that if the amusement is of the same species of amusement, it is within the terms of the statute and prohibited. Applying the rule thus announced in the Roquemore and Muckenfuss cases to the facts in this case, if the amusement is of the

same genus or species as a theater, those cases and the other cases cited by relator, announce the doctrine that would remand relator. In the complaint in this case it is alleged that the moving picture exhibition came within the definition of amusement of the character, kind and species of a theater. Now, what does the word "theater" mean as used in our statute? It does not mean the building, but the performance or exhibition given. Mr. Bouvier, in his law dictionary, gives this definition: "Theater—Although the term has an extended signification and comprehends a variety of performances, yet it is conceived that all which it does legitimately comprehend partakes more or less of the character of the drama." He says: "A music hall is not a theater, but theatrical performances may include minstrel performances." The Am. & Eng. Ency. of Law adopts this definition, vol. 28, page 116. And in col. 8, page 6937 of "Words & Phrases," a number of cases are cited which also adopt this definition. A theater, as is commonly understood, is an exhibition or performance, with actors and scenery, presenting a play—it may be a farce or tragedy. The performers act a part or parts, and by their manner of presenting the play amuse, instruct and interest those who attend. It is true, they use spoken words, but a great part of the performance is in the acting, in the way the play is presented; the expression of the actors, the movements of their bodies and hands, the way the scene is arranged. A moving picture show can not be said to be a theater as that term is generally understood, because the actors in a moving picture exhibition in the scenes speak no words, but the scenery is there, the acting, the facial expression, and all the paraphernalia used in the theater is shown in the picture. Everything to be seen in the theater in a play is also exhibited upon the canvas in a moving picture exhibition; it is all presented except the spoken words. It is stated in the agreement that the "court may take judicial knowledge of the nature and character of moving picture shows," and while, in all instances we know, these moving picture shows are termed "theaters," yet the fact they are so called, would not make them theaters, yet it but illustrates that in the minds of the exhibitors, and in the minds of the public, it is an exhibition of a similar character and kind, and of the same species. "Faust" is presented in the theater, and is also presented in the moving picture exhibitions; in fact, the moving picture exhibitions of which we have any knowledge are but representations of plays and scenes in real life. The theater is but a presentation of a play. One is the living person acting, while the other is the picture of the living person performing the same acts. Thousands of persons have gone to see Madame Bernhardt act, who understand not a word of French, and yet all her plays are presented in the French language, hardly a person in attendance understanding a spoken word. And yet she draws magnificent crowds to see the play and the acting. By those who have seen her, it is said to be grand, and while she speaks in a language none understand, yet no one would be so bold as to say

the exhibition given by her is not a theatrical performance, and an enjoyable one, too. In moving picture shows every scene in a play is depicted, pictures of actors are there, they are made to frown and smile, gesticulate, give evidence of pleasure or displeasure, and where one has read the play, he can follow the exhibition from beginning to end understandingly, and especially is this true where a person stands by and explains each scene as it is thrown upon the canvas. Every person who has attended the moving picture exhibitions recognizes that the pictures are reproductions of plays, in many instances acted on the stage in regular theaters. We agree with relator, in the main, in the law as presented, except insofar as he would give to the words, "and such other amusements," no meaning, for they can not be said to refer to another theater. The use of the word theater would embrace all character and kinds of a theater, and "other amusements" refer to some kind of amusement, and as said in the Roquemore case, it means other amusements of the same genus. It is a question of fact, not of law, whether a moving picture show is of the same species and of similar character and kind of amusement as a theater, and if it is not of this species of amusement, we do not understand that term. It is but the presentation of plays and scenes from real life; the theater is nothing more or less. The moving picture shows present comedy and tragedy, as do the theaters. It calls forth the same emotions from the patrons as do the theatres, to a greater or less extent. In fact, it is an exhibition of the same character and kind on canvas without spoken words. To hold otherwise, would be for us to nullify and render meaningless the words "and such other amusements," and this we are no more authorized to do than we are authorized to enact laws. The legislative branch of the government write and enact the laws, and the courts are but to construe and enforce them. When the Legislature, by law, provided that "theaters and such other amusements" are prohibited on Sunday, they meant something besides theaters, or they would not have used the additional words, "and such other amusements." In their broadest signification these words would embrace every character of amusement on the Sabbath to which an admission fee is charged, but in the Roquemore case, this court has given to those words a limited meaning, and held that they mean amusements of the same species, and of similar character, and kind, and further we can not go, for to do so, would be for us to nullify a statute. A court is not authorized to ignore entirely words of general import, which follow words of special designation. This court in adopting the rule of ejusdem generis, in construing this statute, did so with the knowledge that the words, "and such other amusements," had a meaning, and in the Roquemore and Muckenfuss cases so declare, and was intended by the Legislature to apply to other amusements of the same species. In adopting such construction, this court had in view the other well known rule of law, that if to apply the rule ejusdem generis, would give to the words no meaning, it would not

apply, but the general meaning of the words would be given force and effect and embrace all character of amusements. As is said in Sutherland on Statutory Construction, section 437:

"In cases coming within the reach of the principle of ejusdem generis, general words are read not according to their natural and usual sense, but are restricted to persons and things of the same kind and genus as those just enumerated; they are construed according to the more explicit context. This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmaker. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the Legislature is to be found in the ordinary meaning of the words of the statute. The sense in which general words, or any words, are intended to be used, furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning will be given, according as the intention is thus indicated. The doctrine of ejusdem generis yields to the rule that an act should be so construed as to carry out the object sought to be accomplished by it, so far as that object can be collected from the language employed. 'But the doctrine of ejusdem generis,' says the Supreme Court of Minnesota, 'is but a rule of construction to aid in ascertaining the meaning of the Legislature, and does not warrant a court in confining the operation of a statute within narrower limits than intended by the lawmakers. The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors.' So the restriction of general words to things ejusdem generis *must not be carried to such an excess as to deprive them of all meaning.* The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing which can be called ejusdem generis. If the particular words exhaust a whole genus, the general words must refer to some larger genus. 'If the particular words exhaust the genus, there is nothing ejusdem generis left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose.' *The general words are not to be rejected,* and the maxim ejusdem generis must yield to the maxim that every part of a statute should be upheld and given its appropriate effect, if possible."

Thus, if we were to reject the rule announced in the Roquemore and Muckenfuss cases, those general words would of necessity embrace

every character of amusement to which an admission fee is charged, and some contend that this is the proper construction, yet as this court has held in those two cases, that these words must be given the narrower meaning, and that they refer alone to amusements of the same species or genus, we are inclined to follow them, and in construing this statute, we have followed the rule laid down in the Roquemore and Muckenfuss cases, and by no rule of law can it be further extended, without entirely rejecting the general words used, and this a court is never authorized to do.

Being of the opinion that a moving picture show of the character and kind presented in this State, comes within the definition of amusements of like character, kind and species as a theater, and while not a theater, yet it is of the same genus, relator is remanded. Our statutes refer to a "horse" and this term has been held to embrace a mare, a mule, a jack, a jenny, as they are all of the same species, and many illustrations might be cited as holding that all things of the same genus are embraced, even when not followed by general words, but we deem it useless.

*Relator remanded to custody.*

Prendergast, Judge. I concur.
Davidson, Presiding Judge, dissents.

DAVIDSON, PRESIDING JUDGE, (dissenting.)—The questions of fact, and the questions of law dependent upon the facts, are carefully and accurately stated in applicant's brief, and the authorities are cited in support of the propositions relied upon for the discharge from custody of applicant. The brief and argument concisely and ably present the legal questions involved, and in my judgment, the propositions relied upon are correct and sustained by the authorities and the law. I, therefore, adopt the brief of counsel as my dissenting opinion, which is as follows:

"The applicant, William Lingenfelter, is charged by complaint in the Corporation Court in the city of Waco, Texas, with being the proprietor of a place of public amusement commonly known as a 'picture show,' the same being in the nature of a theater where motion pictures are displayed, and with having as such, unlawfully permitted said place of public amusement to be opened for·public amusement on Sunday, April 16th, 1911, and with having permitted a performance consisting of a display of motion pictures for public amusement, to be given and exhibited in said place of public amusement and for which performance and exhibition an admission fee was charged."

This complaint was submitted to the court upon a writtten agreement as to the facts. The court considered said statement of facts and held that defendant, William Lingenfelter, was guilty of a violation of article 199 of the Penal Code, and assessed his punishment at a fine of $20, and ordered that he be committed to custody until said fine and costs were paid.

Applicant applied to the Hon. Richard I. Munroe, judge of the District Court of McLennan County, for a writ of habeas corpus, which was denied, and he thereupon presented his application to the presiding judge of this honorable court who granted the writ and made it returnable before the Court of Criminal Appeals on Wednesday, May 24th, 1911.

A certified copy of the original complaint, statement of facts and judgment of conviction are attached to the application in this case and made a part thereof, and agreed between the honorable assistant attorney-general and the applicant to be considered as record evidence of the matters therein contained, and as a statement of facts for the hearing of said writ before this honorable court.

Said statement of facts, in substance, shows that applicant was the proprietor of a moving picture show situated in Waco, Texas, and that on the 16th day of April, 1911, he kept said picture show open to the public and gave an exhibition of moving pictures therein, and charged an admission fee of five cents for each person who entered said place and saw said exhibition.

Said statement of facts further shows that said moving picture show was then and there conducted in an ordinary building, and that at the rear of the same was a screen or canvas upon which said pictures were exhibited by reflection from the moving picture machine. That the pictures upon the screen were produced by running a long film commonly known as a 'reel,' through said moving picture machine. That said film, or reel, consisted of a great number of separate negatives, and the running of the same through the machine produced to the eye the appearance of the persons in said pictures moving to and fro as in case of ordinary moving picture shows.

Said statement of facts further shows that there was no stage in said room, and no vaudeville performance given, and no actors and no exhibition except the said pictures on said screen.

Said statement of facts further shows that said pictures so exhibited were representations of scenes in the life of Christ. Said statement of facts further shows that said place is run exclusively as a moving picture show and that there is no exhibition of vaudeville, or other entertainment in the ordinary everyday operation of the same, and that the sole entertainment furnished is the exhibition of such moving pictures.

Said statement of facts further shows that it was agreed between the State and the defendant that the case should be submitted to the court upon the same, without other evidence, and that the sole issue to be determined was whether or not the complaint in the case charged an offense against the law, or whether or not the facts therein agreed upon constituted a violation of art. 199 of the Penal Code of the State of Texas.

The sole question for determination is whether or not the exhibition of moving pictures in an ordinary moving picture show, without vau-

deville, or other attractions, or exhibitions of any kind, is an offense under article 199 of the Penal Code, when given on Sunday and an admission fee charged therefor.

Appellant respectfully submits that such exhibition is not an offense under such article and supports his contention by propositions, authorities and argument as follows: Propositions. 1. No person shall be punished for any act or omission unless the same is made a penal offense and a penalty affixed thereto by the written law of this State.

2. Article 199 of the Penal Code, having provided that the term, "place of public amusement," as therein used, shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged, no public amusement whatever, though exhibited on Sunday, and a fee charged for admission thereto, is prohibited by said article except those specifically named in said article, and such as are of the same kind and class as those named therein.

3. A moving picture show, pure and simple, without vaudeville or other attractions, is not a circus, theater or variety theater.

4. Such a moving picture show is not of the same kind or class of amusements as circuses, theaters, or variety theaters.

5. The exhibition of moving pictures on Sunday and the charging of an admission fee therefor, not being prohibited by said article 199, or any other article of the Penal Code of the State of Texas, the conviction of appellant in the Corporation Court was without authority and unlawful, and his confinement by virtue of said judgment was unlawful, and he is entitled to be discharged from such unlawful restraint and custody.

Authorities: On first proposition. Penal Code, arts. 1, 3, 4, 5, and 6. On second proposition. Ex Parte Roquemore, 60 Texas Crim. Rep., 282, 131 S. W., 1101; Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W., 1101; Crow v. State, 6 Texas, 334; Ex Parte Hull, 110 Pac., 256; State v. Prather, 100 Pac., 57; Ex Parte Neet, 57 S. W. Rep., 1025. On third proposition. State v. Cody, 120 S. W. Rep., 267; State v. Penny, 111 .Pac., 727; Bloch v. City of ·Chicago, 87 N. E. Rep., 1011; 8th Words & Phrases, 6937-8. On fourth proposition. 8th Words & Phrases, 6937-8; People v. Lynch, 108 N. Y. Sup., 209; Keith & Proctor v. Bingham, 108 N. Y. Sup., 205; People v. Hemleb, 111 N. Y. Sup., 690; William Fox Amusement Co. v. McClellon, 114 N. Y. Sup., 594; Edwards v. McClellon, 118 N. Y.· Sup., 181. On fifth proposition. Ex Parte Roquemore, 60 Texas Crim. Rep., 282, 131 S. W. Rep., 1101; Crow v. State, 6 Texas, 334; Ex parte Neet, 57 S. W. Rep., 1025.

Article 199 of the Penal Code, under which the defendant was being prosecuted, reads as follows: "Any merchant, grocer or dealer in wares or merchandise, or trader in any business whatsoever, or the proprietor of any place of public amusement, or the agent or employe

of any such persons, who shall sell, barter or permit his place of business or place of public amusement to be open for the purpose of traffic or public amusement on Sunday, shall be fined not less than twenty nor more than fifty dollars. The term, place of public amusement, shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives and places of like character with or without fees for admission."

It is not contended by the State that a picture show is a disorderly house, low dive or place of like character. It is plain that a picture show without vaudeville is not a circus or a variety theater. The complaint charges that the picture show in question was in the nature of a theater and it is considered useless to discuss any other phase of the statute.

We are not considering the question as to whether the Legislature could enact a law prohibiting the opening of a moving picture show on Sunday, but only the question of whether it has already enacted such a law. In so far as the statute under which applicant is prosecuted, is penal in character, it is to be construed in accordance with the provisions of arts. 1, 3, 4, 5, and 6 of our Penal Code. These articles read as follows: "Article 1. The design of enacting this Code is to define in plain language, every offense against the laws of this State and affix to each offense its proper punishment. Article 3. In order that the system of penal law in force in this State may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, unless the same is made a penal offense and a penalty is affixed thereto by the written law of this State. Article 4. The principles of the common law shall be the rule of construction, when not in conflict with the Penal Code or Code of Criminal Procedure, or with some other written statute of the State. Article 5. In the construction of this Code, each general provision shall be controlled by a special provision on the same subject, if there be a conflict. Article 6. Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed or from some other written law of the State, such penal law shall be regarded as wholly inoperative."

These statutes make it plain that this, or any other prosecution, to be lawfully sustained, must be based upon a clear, explicit and unequivocal declaration of the written or statute law of the State, and that this and other penal statutes are to be strictly construed.

The statute declares that the term "place of public amusement" shall be construed to mean "circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged."

Under the common law rules of construction and also under the settled law of this State, this statute is to be construed as applying only to circuses, theaters, variety theaters and *other public amusements of the same kind or class.*

This principle of construction is announced in substance by the Supreme Court of this State in the early case of Crow v. State, 6 Texas, 334. It is clearly expressed and applied in Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W., 1131. It is again announced, explained and applied in an able and lucid opinion by Judge Ramsey in Ex Parte Roquemore, 60 Texas Crim. Rep., 282, 131 S. W., 1101. In that case the court uses the following language: "It will be noted that this article undertakes to name and designate the place of public amusement, and it is said that it shall be so construed as to mean 'circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged, and shall also include dances at disorderly houses, low dives, or places of like character, with or without fees for admission. That baseball is not specifically named, of course, is clear. What are we to understand by the general term, 'and such other amusements as are exhibited and for which an admission fee is charged?' Clearly, we think, amusements of like or similar character."

The court further proceeds in said opinion as follows: "The doctrine of ejusdem generis is applied in all cases where there is doubt as to the intention of the Legislature and as the rule for statutory construction is stated, to be that where general words follow particular words in a statute, the general words will be limited in their meaning, or restricted to things of like kind and nature with those specified. . . . It is within the power of the Legislature to make the playing of baseball on Sunday a misdemeanor, but if such be the purpose, apt words can readily be employed which will express that intention and leave no room for doubt."

It will be borne in mind that the Roquemore case involved the construction of this statute as applied to the exhibition of a game of baseball and the charging of admission thereto on Sunday. The language used, however, applies with equal force to the case here under consideration. It is equally clear that this statute, in terms, does not prohibit the exhibition of a moving picture show on Sunday, and it is equally clear that if the Legislature desires to prohibit such exhibitions on Sunday, apt words can be readily employed which will express that intention, and that until such intention is expressed by the Legislature in a clear and explicit statute, the exhibition of a moving picture show on Sunday is no offense, whether an admission fee be charged or not.

In the Roquemore case, the court further proceeds to elaborate the reasons and application of the rule as follows: "In the case of Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W. Rep., 1131, we had occasion to review and consider at length the rule of construc-

tion applicable to a statute such as this. We there said: "It is a familiar rule that where general words follow particular and specific words, the former must be confined to things of the same kind." It has been held also that this rule is especially applicable in the interpretation of statutes defining crimes and regulating their punishment. After quoting numerous authorities, the court continues: "The doctrine itself is thus well expressed in Lewis' Sutherland, Statutory Construction: 'When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of ejusdem generis. Some judicial statements of this doctrine are here given. When general words follow an enumeration of particular things, such words must be held to include only such matters or objects as are of the same kind as those specifically enumerated. The rule is that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases of like kind to those designated by the particular words. It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear, if standing alone, but as related to the words of more definite and particular meaning with which they are associated. The rule is supported by numerous cases."

In support of the rules above announced, the court quotes more than a half column of authorities from various States.

The court further said in the Roquemore case: "Another good rule for construction is that when a particular class is spoken of and general words follow the class first mentioned, is to be taken as the most comprehensive and the general words treats as referring to matters ejusdem generis, with such class." (Citing Matters of Hermance et al., 71 N. Y., 481, and other authorities.)

We have quoted largely from the Roquemore case because it not only announces the general rule, but applies it without equivocation to the statute under consideration. For the purposes of this case the moving picture show exhibited by applicant must have been either a theater, or of the same kind and class as a theater in order to make him amenable to the punishment prescribed.

Was the moving picture show in question a theater? The following judicial definitions of a theater, with the authorities sustaining the same, are taken from 8th Words & Phrases, page 6937.

A theater is a house for the exhibition of dramatic performances as

tragedies, comedies, and farces; a playhouse comprehending the stage, the pit, the boxes, galleries and orchestra. Among the ancients, it signified an edifice in which spectacles or shows were exhibited for the amusement of spectators, as its derivation from the Greek verb, "to see," plainly shows. Rowland v. Kleber, 1 Pittsb. R., 68, 71; Bell v. Mahn, 15 Atl., 523; 121 Pa., 225; 1 L. R. A., 364, 6 Am. St. Rep., 786.

A theater is a house for the exhibition of dramatic performances, but the word "theater," in art. 1850 (P. L. 773), providing a punishment for any person or persons attempting to show, hold or exhibit any theater, circus or menagerie, etc., without a license, refers not to the place, but to the troupe or exhibition itself—the language being, "every other county within the bounds of which such theater may be shown, held or exhibited," that is, in every county in which the dramatic performance is exhibited, the license shall be paid. Commonwealth v. Keeler, 3 Pa. Dist. R., 158, 161.

An opera company need not be licensed under an act fixing licenses for theaters. Rowland v. Kleber, 1 Pittsb. R., 68, 71.

A musical performance is not a theatrical, nor a dramatic performance within the meaning of Rev. St. Ohio, section 7032a, prohibiting any theatrical or dramatic performance of any kind or description on Sunday. State v. Fennessy, 10 Ohio S. & C. P. Dec., 608, 609.

It can be readily ascertained from the legal definition of this word, that the question of whether an amusement is a theater, is determined not from the name, but from the exhibition itself, and since a moving picture exhibition does not comprehend actors, pit, boxes nor gallery, nor a dramatic performance, it is quite clear that a moving picture show is an exhibition wholly unlike and dissimilar from a theater in any respect, is not of like kind, but as said by the Supreme Court of the State of Illinois, is a separate and distinct branch of the amusement business.

These authorities show conclusively that a moving picture show has none of the essential elements of a theater and they are also useful to show that lacking such essential elements it is not of the same kind or class of amusement as a theater.

The case of State v. Cody, 120 S. W. Rep., 267, is by the Court of Civil Appeals for the Third Supreme Judicial District, and the opinion of the court was delivered by the late lamented Chief Justice Fisher. In that case the court considered the identity, likeness and similarity between a circus and a wild west show. The opinion is not only interesting, but also exceptionally able and well worth perusal as a proper and decorous expression of judicial humor.

Bearing on this question of identity and similarity between a theater and a moving picture show, we respectfully call the court's attention to the following:

The Supreme Court of Montana, in the case of the State v. T. C. Penny, 111 Pac., 727, in an opinion decided on the 15th day of Novem-

ber, 1910, construed the following statute by that State. Article 8369, of the Revised Code of the State of Montana reads as follows: "Every person who, on Sunday, or the first day of the week, keeps open or maintains or aids in opening or maintaining any theater, playhouse, dance house, race track, gambling house, concert saloon, or variety hall, is guilty of a misdemeanor." The appellant, Penny, was convicted and fined by the lower court for keeping his picture show open on Sunday, and the higher court reversed and dismissed the case, and in the opinion, held that a moving picture show was not a theater. The court says: "The sole question of determination is whether the statement of facts is sufficient to warrant the conclusion that the defendant was guilty of keeping open and maintaining a theater, contrary to the provisions of section 8369 of the Montana Code. The only other question is, does the operation of a moving picture show on Sunday violate the statute prohibiting the opening or maintaining of a theater on Sunday? The mere fact that the show was sometimes called a theater was of no consequence in view of the further fact that we have before us a particular description of the class of entertainment furnished. If the show was a theatrical performance, the statute would be violated; if it were maintained in a place other than a theater building, as for instance, in the open air; if the giving of a moving picture show was in terms prohibited by the statute, the courts would be bound by the words employed, and there would be no occasion to construe the legislative language. As this form of entertainment is not mentioned on account of the fact, probably, that shows of the kind were unknown and unthought of at the time the law was enacted, it is the duty of the court in seeking the legislative meaning to first ascertain the reason for the enactment of the law. The law prohibited the giving of a theatrical performance as such. Therefore, that feature of it may not be questioned. Doubtless, the legislative assembly considered that such a show ought not to be permitted on Sunday. But, we must seek the reason for such a conclusion in order to ascertain whether a show, not specifially mentioned, is also prohibited. These and similar laws are passed in the exercise of the police powers of the State. They are presumed to be reasonable as enacted.

We take the following from 31 Cyc., 902: "Police power, strictly speaking, a term which has relation to a power of organization of a system of regulations tending to the health, order, convenience and comfort of the inhabitants, and to the prevention and punishment of injuries and offense to the public."

It is undoubtedly by virtue of the police power that theater performances on Sunday are prohibited. They are not *mala in se*, such performances can not affect the health, convenience or comfort of the inhabitants, unless they are so boisterous in their nature as to be a disturbing element. Therefore, it must be that they are prohibited for the purpose of preserving the peace, order and good morals of the community. The chapter in which section 8369, Revised Code, is

found, is entitled "Offenses against Good Morals." (The chapter in which article 199 of the Penal Code of Texas is found is entitled, "Offenses Affecting Religion.")

It may, perhaps, be admitted that the Legislature has power to prohibit the exhibition of a moving picture show or pictures of a particular description on Sunday, or demoralizing scenes on any other day, but as it has not in terms done so, such a show is not prohibited unless it falls within that class of entertainment which tends to disturb the peace, quiet, good order, or morals of a community. The statement of facts discloses that the pictures shown at the time and place mentioned in the complaint were of a clean and moral character and had been approved by a so-called Board of Censorship, which had the power to prohibit and did prohibit the exhibition of any unclean or immoral pictures; the moving pictures were accompanied by piano music, and as a part of the performance, a vocal solo of a sentimental nature, accompanied by the music on the piano, was sung. We can not perceive how this sort of an entertainment could possibly affect either the good morals or the good order of the city of Missoula, or its inhabitants. It appears to us to have been an innocent amusement having a tendency to instruct, rather than to demoralize or disturb; and as the Legislature has not seen fit to prohibit it, the courts ought not do so." Ex Parte Hull, 110 Pacific, 256.

In the case of Moore v. Owen, 109 N. Y. S., 585, the court held that a moving picture exhibition was a show within the meaning of a statute prohibiting shows on the first day of the week. See Economopouslos v. Bingham, 109 N. Y. S., 728, but our statute does not prohibit the opening or maintaining of a show, it specifically mentions a theater, which means a theatrical performance. While the word "show" may, and undoubtedly does, include a theatrical performance, the word "theater" is not sufficiently comprehensive to include all shows.

In the case of Edwards v. McClellan, 118 N. Y. S., 181, the Supreme Court of New York says: "Moving picture shows given indoors, accompanied by music, electric light, advertising and posters, are not public shows within Penal Code, section 265, prohibiting all shooting, hunting, fishing, playing, horse racing, gaming or other public exercises or shows on Sunday."

In the case of William Fox Amusement Company v. McClellan, 114 N. Y. S., 594, the Supreme Court of the State of New York held: "Moving picture shows in a hall for which admission is charged, are within the terms of Penal Code, section 265, forbidding the exhibition on Sunday of certain specified public shows, not including moving picture shows," and in the same case the court held that a moving picture show is not within Penal Code, section 277, and section 1481 of the charter laws of 1897, prohibiting specified indoor exhibitions on Sunday, such shows not being one of those specified in the statute.

In the case of People v. Hemleb, 111 N. Y., 609, the Supreme Court

of the State of New York held that under Penal Code, section 265, prohibiting all shooting, hunting, fishing, playing, horse racing, gambling, or "other public exercises or shows" on Sunday, first enacted by the laws of 1788, prohibiting shooting, fishing, sporting, playing, horse racing, hunting, frequenting tippling houses on Sunday, and carried into the revision of 1830, with the addition of the word "gaming," and subsequently modified by adding "or other public sports, exercises or shows," does not, when considered in connection with section 277, prohibiting theatrical plays, etc., on Sunday, prohibit one from giving on Sunday, an indoor exhibition consisting of throwing on a canvas pictures, and of piano playing at intervals.

In the case of Weisblatt v. Bingham, 109 N. Y., 545, the Supreme Court of New York held: "A license is not required for a free moving picture show in an ice cream, saloon and candy store to draw trade under Greater New York Charter Laws of 1897, page 519, requiring a license for the exhibition to the public in any building, garden, or grounds, concert room or other place or room in the city of New York, of any tragedy, comedy, opera, play, ballet, farce, minstrelsy or dancing, or 'any other entertainment of the stage,' or any equestrian circus or dramatic performance or any performance of jugglers or rope dancing or acrobats, such show not being within the meaning and purview of the Act and not within the words 'any other entertainment of the stage.'"

In the case of Keith & Proctor v. Bingham, 108 N. Y. S., page 205, the Supreme Court of the State of New York held:

"Penal Code, 265, prohibited all shooting, hunting, fishing, playing, horse racing, gaming, or 'other public sports, exercises or shows,' and all noise disturbing the peace of the day on Sunday. Section 277 provides that the performance of any tragedy, comedy, opera, ballet, negro minstrelsy, negro, or other dancing, racing, boxing, sparring contest, trial of strength, or any part or parts therein, or any circus, equestrian or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, club performances or rope dances on Sunday, shall constitute a misdemeanor." Held that section 265 relates only to public outdoor exhibitions and that the word shows, as there used, did not include a combination lecture and moving picture show accompanied by musical selections in a theater on Sunday.

In the case of People v. Flynn, 108 N. Y. S., 208, the Supreme Court of the State of New York held an exhibition of a stereopticon of pictures, operated by an automatic slot machine device, together with certain other machines, which on the insertion of money in the slot, communicated certain musical selections to the operator, audible to him alone, did not constitute a violation of Penal Code, section 265, prohibiting shows on the first day of the week.

In the case of People v. Lynch, 108 N. & S., 209, the New York Court says: "An exhibition of stereopticon pictures cast on a canvas, on Sunday, and a lecture consisting of the names and descriptions of

the pictures, etc., did not constitute a violation of Penal Code, section 265, prohibiting all shooting, hunting, fishing, playing, horse racing, gaming, or other public exercises or shows on Sunday, and all noise disturbing the peace of the day."

In the case of Bloch v. City of Chicago, 87 N. E., 1011, opinion by the Supreme Court of Illinois, construing an ordinance and its effect on moving picture shows and exhibitions, held:

"Where an ordinance is passed in pursuance of an express power to pass an ordinance of that character, it can not be set aside by the courts, because they deem it unreasonable, and hence as Chicago City Charter empowering the city to prohibit the exhibition of obscene and immoral pictures, has no reference to theaters, their business not being the exhibition of pictures, an ordinance passed in pursuance of the clause regulating moving picture shows, was not invalid as unreasonable because it did not cover theaters. The court, in its opinion, says, referring to theaters:

"Their business is not the exhibition of pictures; it can not, therefore, be said that the exercise of the power conferred by clause 45 is unreasonable, because it does not include the theater. To say that an ordinance is special and applies only to a certain business or to persons engaged in a certain line of business, does not condemn it. The ordinance, however, is not special and contains no *discrimination against persons of the same class, or engaged in the same business.* It applies alike to all persons engaged in the moving picture business, which the bill itself shows to be a *separate and well established branch of the amusement business.* There is no ground for regulations concerning that business which is different from the business of exhibiting pictures by stereopticon, or other similar methods."

While the case of Ex Parte Hull, 110 Pac., 256, involved the operation of a scenic railway on Sunday, it is so pertinent on the question of construction and similarity that we quote therefrom at length, as follows:

"Section 6825 of the Revised Code, provides that "it shall be unlawful for any person or persons in this State to keep open on Sunday, any theater, play house, dance house, race track, merry-go-round, circus, or show, concert saloon, billiard or pool room, bowling alley, variety hall, or any such place of public amusement." Held, "That in order to bring a public amusement, not specifically enumerated by the statute, under the general language, 'any such place of public amusement,' the likeness or similarity must exist in something other than the mere fact that it is a *public amusement,* and must, in a general way, correspond to the amusements specified. An amusement that is not per se unlawful or criminal, and is not in itself immoral or dangerous or detrimental to the public health, will not be included within the provisions of the statute prohibiting certain specified public amusements and *other like and similar amusements on Sunday,* unless the same is forbidden by the statute either in *direct terms* or by *clear implication.*"

The court says: "It is difficult to tell the exact theory on which the lawmakers draughted this section of our statute. The amusements enumerated and prohibited are not similar or kindred amusements. There is apparently nothing common to all of them except that they are all *public amusements*. They are not all immoral amusements, nor are they all noisy and boisterous amusements. The race track may be said to be immoral in that it is a place of betting and gambling and so it may be said that the concert saloon and the variety hall are classes of amusements at least suggestive of immorality. On the other hand, the merry-go-round is not an immoral amusement." And again, the court says: "It is patent that the Legislature did not intend to absolutely forbid and prohibit *all public amusements on Sunday*. If they had so intended, they would have, undoubtedly, said so in so many words. On the contrary, they immediately follow the specific amusements enumerated with the words 'or any such place of public amusement.' The word 'such' has a very definite meaning. It is defined by the lexicographers as 'of the kind; of the same or like kind; identical with or similar to something specified or implied; *being the same as what has been mentioned or indicated;* being the same in quantity, being the quality specified, etc. Now, it is evident that the Legislature intended to prohibit '*any other public amusement not enumerated, which could be distinctly classed as like or similar to those specified,*' but since all are alike in that they are *public amusements, the similarity* must exist in *something else other than the mere fact of amusement.*"

In the case above quoted, the Supreme Court of the State of Idaho, under the statute above indicated, held that a scenic railway operated on Sunday and for which an admission fee was charged, did not constitute a violation of the statute.

It will be observed that our statute says: "Any such other amusements as are exhibited and for which an admission fee is charged," and the Idaho statute says, "or any such place of public amusement." While the words are grouped differently, their construction is identical and the construction to be placed on our language is to be determined by applying the word "such," as applied in the Idaho statute to the particular things prohibited by the statute. In other words, the amusements prohibited on Sunday by our statute, are circuses, theaters, variety theaters, and the same or like kind of amusements as circuses, theaters, variety theaters, or identical with or similar to circuses, theaters or variety theaters.

Now, it is quite clear that a moving picture show does not come within the definition of a circus or variety theater, and the authorities above quoted are unanimous in holding that a moving picture show is not a theater, nor is it classed as a part of a theater, nor is it similar to a theater, nor identical with the same, nor of like kind, but on the other hand, it is a distinct and separate amusement brought into being

by recent invention and unknown at the time article 199 of the Penal Code was enacted.

We, therefore, believe that by applying the doctrine ·of ejusdem generis to the statute, that the exhibition of moving picture shows on Sunday, for which an admission fee is charged, is not a violation of article 199 of the Penal Code.

It will be observed that in the case of Ex Parte Hull, supra, the court applied the doctrine of ejusdem generis and held that a scenic railway was not a violation of the statute, because the general language in the statute did not include any amusement, but included only such amusements as were of like kind to those specifically enumerated.

We note that the Hull case applied the same rule of construction as was done in the case of Ex Parte Roquemore, by our own courts, hereinbefore referred to and quoted.

Now, it will be observed from the complaint and statement of facts presented to the court, that applicant is charged with being the proprietor of a place of public amusement, to wit: a moving picture show, so that under the rule of construction adopted by our own court in the case of Ex Parte Roquemore, and others cited, the relator is not charged with the violation of any law known to our Code. If a moving picture show is not a theater, nor of like kind nor similar character, then clearly it follows under the authorities of all the States and our own State, by the application of the doctrine of ejusdem generis, that a moving picture show, or exhibition, is not prohibited by the terms of article 199 of our Penal Code. In addition to the doctrine of ejusdem generis, but strictly in harmony therewith, we will consider the word "such" in the statute under consideration. It declares that the term "place of public amusement" should be construed to mean, circuses, theaters, and such other amusements as are exhibited and for which an admission fee is charged.

Now, let us eliminate for the moment the doctrine of ejusdem generis and seek the definition and construction of the word "such" in this sentence, and ascertain to what this word "such" refers or relates. The entire meaning of this sentence, so far as the general clause is concerned, if we eliminate the doctrine of ejusdem generis, must depend on what the word "such" relates to. Now, we have already stated the opinion of Supreme Court of Idaho in the case of Ex Parte Hull, wherein the word "such" was used in a general clause prohibiting public amusements, and in the opinion in said case, the word "such" was legally defined. Now, let us see if we can find additional legal definitions of the word "such." Such: Of this or that kind; of the like, sort or kind; resembling, similar, like; preceding as before the object of reference; the same as what has been mentioned; referring to something that has been specified; representing the object in an indefinite sense as particularized in one way or another, or one and another. (Twentieth Century Encyclopedia.) "Such" is defined by Webster as having the particular quality or char-

acter specified; certain; representing the object as already particularized in terms which are mentioned. (State v. Estep, 71 Pacific, 857.) "Such," as used in statutes, is a descriptive and relative word, and refers to the last antecedent unless the meaning of the sentence would thereby be impaired. (Summermann v. Knowles, 33 N. J. Law, 202.) The words, "said" and "such," when used by way of reference to any person or thing, shall apply to the person or thing last mentioned. (Pub. St. N. H., 191, p. 63.) The word "such" is often used to mean as "previously mentioned or specified, not other or different." (Evans v. State, 50 N. E., 820; 150 Ind., 651; State v. Second Judicial District ·Court, 68 Pac., 570-4, 26 Mont., 396.) We believe that the doctrine of ejusdem generis applies and as hereinbefore stated, by application of this doctrine, a moving picture show is not prohibited under the statute.

We further say that the word "such," as used in the statute according to the legal definitions above mentioned, affirmatively precludes and excludes the idea that all public amusements for which an admission fee is charged are violations of the law, and had such been the intention of the Legislature, apt words would have been used by which all public amusements could have been prohibited.

Before we dismiss the subject of construction, we quote from the opinion of the court in Ex Parte Neet, 57 S. W. Rep., 1025, as follows:

"The doctrine of ejusdem generis is as rock-ribbed in the law of this State as any principle ever announced. As applied to penal statutes especially, it is only a humane doctrine and accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law. It observes the respective rights of the different co-ordinate branches of the government by requiring the Legislature to enact the laws and the judiciary to enforce, but not create the laws, not even by construction."

The statement of facts in this case shows that there was no stage in the room where this exhibition was held; that there was no vaudeville performance and no actors, no exhibition, except the said pictures on the screen, and that such pictures were the sole entertainment furnished.

The court necessarily has a well defined idea of the elements and characteristics of an ordinary theatrical exhibition. The statement of facts does not attempt to describe it, but we are constrained to quote from Judge Fisher in the Cody case, as a sensible rule for the application of the individual knowledge of the judge in passing upon questions submitted to him. He says: "We can not pretend to judicial knowledge of this subject, but in considering a word which has common meaning, and the application of which is a matter of common understanding, we are not required to conceal our knowledge

upon that subject, because of the fact that we did not testify in the case."

Applying this common knowledge, we are constrained to remark that if the performance shown by this statement of facts is of 'like kind' as a theater or theatrical performance, it bears only a slight and remote resemblance to that old and ancient institution. No one ever heard a moving picture called a theater; and if they did, their senses certainly deceived them if they thought, when viewing a moving picture exhibition, that they were witnessing a theatrical performance. However, should any one have been unfortunately misled or deluded in the matter, they could very properly feel aggrieved, for if, in witnessing a moving picture exhibition, it were held out as a theater, or theatrical performance, it was a poor one indeed in omitting all the features that should have been exhibited and that are peculiar to that institution.

The statement of facts in this case shows no stage, no pit, no scenery, no boxes, no gallery, no orchestra, no actors and no performers.

S. E. Stratton,<br>J. N. Gallagher,<br>Attorneys for applicants."

In addition to what has been said in the brief, adopted as my dissenting opinion, I wish to add that this is the first instance within my knowledge in this State, where it has been undertaken to hold the moving picture show a theatrical performance. By no stretch of construction, or even of imagination, can this be correct. The Thirty-second Legislature, at its regular session, evidently so recognized, and in support of this, offered a bill amending article 199 of the Penal Code; what is known as H. B., No. 497, was introduced in the House, amending the Penal Code so as to include moving picture shows within its inhibition. As introduced, said Bill 497, reads as follows: "Article 199. Any person, firm or corporation in this State, or any agent, lessee, servant, or employe of any theater, moving picture show, or any other place of public amusement of whatsoever name, where an admission fee is charged, who shall open, run, operate or exhibit, or be concerned in opening, running or operating on Sunday, any theater, moving picture show, or any other place of public amusement, aforesaid, shall be fined in any sum not less than twenty nor more than fifty dollars." To further emphasize the meaning of this bill as introduced in the House, it provided further that the inadequacy of the laws of this State to prohibit the opening, running, operating, and exhibiting moving picture shows, etc., created an imperative public necessity, etc., and the bill was introduced, amending article 199, Penal Code, aforesaid, providing for such emergency clause. The bill was referred to a proper committee and returned to the House with the unanimous adverse report "that it do not pass." In this manner the bill was finally killed and the Legislature, of course, failed to pass it.

Here we have the Legislature itself recognizing the fact that moving picture shows were not included within the meaning of article 199, and an attempt on the part of some members of the House to include them; the House, receiving the adverse committee report, declined to pass the bill, and it went to the waste basket, or, at least, it did not pass and failed to become a law. If moving picture shows were already included in article 199, Penal Code, it was a work of supererogation to seek to re-enact a bill with an amendment, including moving picture shows—a thing in the opinion of the majority, already provided for and included in said article. Under the statute and the case of Ex Parte Roquemore, 60 Texas Crim. Rep., 282, 131 S. W., 1101, and Ex Parte Muckenfuss, 52 Texas Crim. Rep., 467, 107 S. W., 1131, and the other cases cited by appellant in his brief, moving picture shows are excluded from the provisions of article 199, Penal Code, as places of public amusement, inhibited from being kept open on Sunday. The rule of ejusdem generis excludes moving picture shows as being places of amusement set forth in article 199, Penal Code. The authorities are so clear and satisfactory, I deem it unnecessary to discuss the matter further.

I, therefore, adopt the brief of counsel for appellant with the addition that I have made, and for these reasons, respectfully enter my dissent.

### ON REHEARING.

#### December 20, 1911.

HARPER, JUDGE.—At a former day of this term, relator was remanded, and he has filed a motion praying for a rehearing herein. Able counsel represented him, and presented strongly their theory of the case. Inasmuch as we are still of the opinion that he is not entitled to be discharged, we would write no further, except in obedience to a request of relator's counsel that we make it clear whether we intended to hold that all moving picture exhibitions were prohibited on the Sabbath. As the Penal Code of this State prohibits circuses, theaters, variety theaters and such othe amusements as are exhibited, and for which an admission fee is charged on Sunday, and as we are of the opinion that a moving picture exhibition is of the same species of amusement as those named, and comes within the meaning of the words, "and such other amusements," we hold that all moving picture exhibitions, of every character and kind, are prohibited from being exhibited on Sunday.

As illustrative that the amusement is of the same species as those named, we find the following in a current periodical: "There is a studio for the manufacture of moving picture films in the Bronx which employs at times as many as 500 actors. Among them are many strange characters and their wages for a single motion picture amounts at times to $10,000 or more.

"Only a few days ago, a picture was made at a cost of $12,750.

It illustrates the story told in an old English novel and in the telling, required the introduction of almost 600 characters, of whom fifty were principals and 500 were what would constitute the chorus or mob in an opera. There were also more than 100 horses used by the soldiery.

"However, that is another story. The point is, that posing for picture shows, brings together the oldest collection of actors in the world. This one studio employs persons who have appeared before crowned heads in legitimate drama, soubrettes whose pictures appeared on cigar and cigarette boxes a few short years ago, dancers who turned the heads of youthful monarchs when in their prime, tragedians who trod the boards with Booth and Barrett. Age or accident, a fickle public, or misfortune of one kind or another drove them from the legitimate stage and forced them into pantomime."

Relator presents no additional authorities, and we discussed fully in the original opinion all those cited by him. A theater is but a reproduction of some play or scene by acting, by pantomimes or by tableau. A moving picture exhibition is also but a reproduction of these same scenes and plays.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE (dissenting).—The Reporter will give a reasonably full report of brief for applicant on motion for rehearing.